# EXHIBIT A

# AFFIDAVIT

State of Indiana

County of Hamilton

NAME OF INSURED:    PRIMORDIAL MOUNTAIN, LLC

POLICY NUMBER:    BLS 63099057

POLICY DATES:    04-15-2021 TO 04-15-2022

David Hager, archivist of

Ohio Security Insurance Company    and has compared the

attached copies of the insurance policy number listed above and its

endorsements with the original records of the policy of insurance and

endorsements contained in the Company's files and that the same is a

true and exact recital of all the provisions in the said original policy and

endorsements attached thereto.

David Alan Hager

David Hager
Policy Copy Archivist

June 10, 2024



**Coverage Is Provided In:**

Ohio Security Insurance Company

Policy Number:
**BLS    (22)   63 09 90 57**

Policy Period:
**From 04/15/2021 To 04/15/2022**
*12:01 am Standard Time*
*at Insured Mailing Location*

### RESULT OF CANCELLATION



| **Named Insured & Mailing Address** | **Agent Mailing Address & Phone No.** |
|---|---|
| PRIMORDIAL  MOUNTAIN,  LLC<br>1508 Antelope Rd<br>White City, OR 97503 | (646) 844-9933<br>COVERWALLET INC<br>MSC# 17890<br>SOMERSET, NJ 08875-6718 |

A cancellation effective 07/07/2021 has been processed on this policy.

Return Premium

**Total Return Charges**



Any paid but unearned premium will be returned separate from this notice.

**This policy cancelled due to:        Non-Payment**

**\* The Return premium and Total Return Charges Are Subject To Audit.**

| Issue Date | 07/19/21 | Authorized  Representative |
|---|---|---|

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 25 01 08**

This page intentionally left blank.



**Policyholder   Information**

| **Named Insured & Mailing Address** | **Agent Mailing Address & Phone No.** |
|---|---|
| PRIMORDIAL  MOUNTAIN,  LLC<br>1508 Antelope Rd<br>White City, OR 97503 | (646) 844-9933<br>COVERWALLET INC<br>MSC# 17890<br>PO BOX 6718<br>SOMERSET, NJ 08875-6718 |





## *Dear Policyholder:*



**Your Commercial Documents**

We know you work hard to build your business. We work together with your agent, **COVERWALLET INC                (646) 844-9933** to help protect the things you care about. Thank you for selecting us.

Enclosed are your insurance documents consisting of:

- General Liability

To find your specific coverages, limits of liability, and premium, please refer to your Declarations page(s).

If you have any questions or changes that may affect your insurance needs, please contact your Agent at (646) 844-9933

**Reminders**

- Verify that all information is correct
- If you have any changes, please contact your Agent at (646) 844-9933
- In case of a claim, call your Agent or  1-844-325-2467

**You  Need  To Know**

- **CONTINUED ON NEXT PAGE**

*To report a claim,  call  your Agent or  1-844-325-2467*

DS 70 20 01 08

## You Need To Know - continued

• **NOTICE(S) TO POLICYHOLDER(S)**
  The Important Notice(s) to Policyholder(s) provide a general explanation of changes in coverage to your policy. The Important Notice(s) to Policyholder(s) is not a part of your insurance policy and it does not alter policy provisions or conditions. Only the provisions of your policy determine the scope of your insurance protection. It is important that you read your policy carefully to determine your rights, duties and what is and is not covered.

| FORM NUMBER | TITLE |
| --- | --- |
| CNI90 11 07 18 | Reporting A Commercial Claim 24 Hours A Day |
| NP 74 44 09 06 | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| NP 74 50 01 07 | Important Audit Information |
| SNI04 01 12 20 | Liberty Mutual Group California Privacy Notice |
| SNI36 01 05 20 | Oregon - Terrorism Insurance Premium Disclosure And Opportunity To Reject |
| SNI90 04 03 18 | Oregon Marijuana Exclusion - Notice To Policyholders |

CNI 90 11 07 18

# REPORTING  A COMMERCIAL   CLAIM  24 HOURS  A DAY

**Liberty  Mutual  Insurance  claims  professionals  across  the  United  States  are  ready  to  resolve  your  claim quickly  and  fairly,  so  you  and  your  team  can  focus  on  your  business. Our  claims  teams  are  specialized, experienced  and  dedicated  to a high  standard  of  service.**

**We're  Just  a Call  Away  - One Phone  Number  to Report  All Commercial  Insurance  Claims**

Reporting   a  new  claim  has  never  been  easier.  A  Liberty  Mutual  customer  service  representative   is available  to  you  24/7  at  `1(844)325-2467`   for  reporting  new  property,  auto,  liability  and  workers' compensation   claims. With  contact  centers  strategically  located  throughout  the  country  for  continuity  and accessibility,   we're  there  when  we're  needed!

**Additional  Resource  for Workers'  Compensation  Customers**

In  many  states,  employers   are  required  by  law  to  use  state-specific   workers  compensation   claims  forms and  posting  notices. This  type  of  information   can  be  found  in  the  Policyholders   Toolkit  section  of  our website  along  with  other  helpful  resources  such  as:

- Direct  links  to  state  workers  compensation   websites  where  you  can  find  state-specific   claim forms

- Assistance  finding  local  medical  providers

- First  Fill  pharmacy  forms  - part  of  our  managed  care  pharmacy  program  committed  to  helping injured  workers  recover  and  return  to work

Our  Policyholder   Toolkit  can  be  accessed  at  **www.libertymutualgroup.com/toolkit.**

For  all  claims  inquiries  please  call  us  at  `1(844)325-2467`  .

©  2018 Liberty Mutual  Insurance

CNI 90 11 07 18

Page 1 of 1

NP 74 44 09 06

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

Please refer any questions you may have to your insurance agent.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© 2011 Liberty Mutual Insurance. All rights reserved.

NP 74 44 09 06     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 1 of 1

NP 74 50 01 07

## Important Notice
## Notice to Policyholders

This explanation is not a part of your insurance policy, and it does not alter any of its provisions or conditions.

Please refer any questions you may have to your insurance agent.

We would like to thank you for being a policyholder. We appreciate your business.

If your policy contains a condition stating it is subject to a premium audit we would like to take this opportunity to explain how the audit process works and answer the most common questions we receive from our policyholders. The information in this notice will make it easier for you to prepare for your audit.

**Insurance Premium Audit Facts**

Audits can benefit our policyholders by allowing us to collect the appropriate amount of premium for each policy.

Most commercial policies are written based on estimated or fluctuating exposure bases. At the end of the policy term an audit will determine the actual exposure bases and the premium will be adjusted accordingly. A company representative will conduct the audit.

The premium auditor will examine and audit records that relate to your policy. The records necessary to complete the audit will vary, based on the coverages you have. Types of records that may be requested for your audit include, but are not limited to:

- Payroll Records, including 941 forms
- Sales Journals or income statements
- General Ledger
- Cash Disbursements Journal
- Subcontractor Certificates

Keeping accurate and complete records will allow the auditor to properly classify and allocate your exposures correctly. Often there are allowable credits available according to insurance manual classification and rating rules. The premium auditor will be able to give you the credits, to which you are entitled, if your records provide the necessary details. Providing the records your auditor needs can save you time and money as well as expedite the audit process.

**How Audits are Conducted**

Audits are handled in different ways, depending on the types of coverages you may have. We conduct audits in the following ways:

Physical Audit - An auditor will contact you and set up a convenient time to personally come to your business and review your records.

Phone Audit -Forms will be mailed to you, explaining what is necessary to complete a phone audit. The phone auditor will contact you or your bookkeeper for this information.

Voluntary Audit - Forms will be mailed to you for completion. We will provide you with contact information if you need assistance in completing the forms.

NP 74 50 01 07

**Completing the audit**

Many states have enacted legislation that governs the time in which an audit must be completed, billed and paid. This applies to audits for cancelled policies as well as regular audits. In order to comply with state regulations, it is important to make your records available for audit when our representative contacts you. We will make every effort to complete the audit within a reasonable time after the close of the policy period stated in your policy.

**Frequently Asked Questions**
**Q: What if I use subcontractors?**

A: Subcontractors are factored in to the audit process. Subcontractors who do not have insurance are treated as though they are your employees at the time of the audit. If your subcontractor furnishes you with a certificate of liability or workers' compensation insurance, your insurance cost for that subcontractor could be less. See your policy for details on limits of insurance required for certificates.

**Q: I have no employees and work alone. Does the insurance company still need to complete an audit?**

A: Yes. The auditor will need to verify you worked alone by examining business records that may include tax filings, disbursements, and check stubs.

**Q: Do I need an audit if I have cancelled my policy or am no longer insured with you?**

A: An audit may still be necessary even if you no longer have an active policy with us. The audit would cover the time period for which you were insured by us. Other factors that may determine if an audit is necessary include the time the policy was in effect and the amount of premium involved.

**Q: If I use leased employees but the leasing company carries the liability, are the leased employees excluded from my General Liability policy?**

A: No. The manual rules stipulate that all leased employees are covered on the insured's policy.

**Q: Is it necessary to keep records on any casual labor I use?**

A: Yes. Casual labor payroll is examined during the audit.

**Q: What happens if I do not comply with the audit and fail to provide all necessary records and verification?**

A: It's important to provide the necessary information in order to complete the audit. If you fail to do so, your policy may be cancelled or nonrenewed. You may also receive an estimated audit statement based on increased policy exposure estimates due to non- compliance of audit.

If you would like additional information about the policy audit process, your independent agent can assist you. The Premium Audit Department is also available to answer any questions you may have regarding this process.

Please contact us at 1-888-224-9246 or via E-mail at PremiumAuditServices@libertymutual.com

NP 74 50 01 07

## LIBERTY MUTUAL  GROUP  CALIFORNIA  PRIVACY  NOTICE
Commercial  Lines (excluding  Workers' Compensation)
(Effective  December  15, 2020)

Liberty Mutual Group and its affiliates, subsidiaries, and partners (collectively "Liberty Mutual" or "we", "us" and "our") provide insurance to companies and other insurers. This Privacy Notice explains how we gather, use, and share your data. This Privacy Notice applies to you if you are a **Liberty Mutual commercial line insured or are a commercial line claimant residing in California**. It does not apply to covered employees or claimants under Workers' Compensation policies. If this notice does not apply to you, go to libertymutual.com/privacy    to review the applicable Liberty Mutual privacy notice.

### What Data Does Liberty Mutual Gather?

We may collect the following  categories of data:

- **Identifiers**, including a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security Number, driver's license number, or other similar identifiers;

- **Personal information described in California Civil Code § 1798.80(e)**, such as your name, signature, Social Security Number, physical characteristics or description, address, telephone number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, financial information, medical information, or health insurance information;

- **Protected classification characteristics**, including age, race, color, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, or veteran or military status;

- **Commercial information**, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories and tendencies;

- **Internet or other similar network activity**, including browsing history, search history, information on a consumer's interaction with a website, application, or advertisement;

- **Professional or employment related information**, including current or past job history or performance evaluations;

- **Inferences drawn from other personal information**, such as a profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes;

- **Risk data**, including data about your driving and/or accident history; this may include data from consumer reporting agencies, such as your motor vehicle records and loss history information, health data, or criminal convictions; and

- **Claims data**, including data about your previous and current claims, which may include data regarding your health, criminal convictions, third party reports, or other personal data.

For information about the types of personal data we have collected about California consumers in the past twelve (12) months, please go to libertymutual.com/privacy    and click on the link for the California Supplemental Privacy Policy.

### How We Get the Personal Data:

| We gather your personal data **directly from you**. For example, you provide us with data when you: | We also gather your personal data **from other people**. For example: |
|---|---|
| ● ask about, buy insurance or file a claim | ● your insurance agent or broker |
| ● pay your policy | ● your employer, association or business (if you are insured through them) |

| | |
|---|---|
| • visit our websites, call us, or visit our office | • our affiliates or other insurance companies about your transactions with them |
| | • consumer reporting agencies, Motor Vehicle Departments, and inspection services, to gather your credit history, driving record, claims history, or value and condition of your property |
| | • other public directories and sources |
| | • third parties, including other insurers, brokers and insurance support organizations who you have communicated with about your policy or claim, anti-fraud databases, sanctions lists, court judgments and other databases, government entities, open electoral register, advertising networks, data analytics providers, social networks, data brokers or in the event of a claim, third parties including other parties to the claim witnesses, experts, loss adjustors and claim handlers |
| | • other third parties who take out a policy with us and are required to provide your data such as when you are named as a beneficiary or where a family member has taken out a policy which requires your personal data |

For information about how we have collected personal data in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

### How Does Liberty Mutual Use My Data?

Liberty Mutual uses your data to provide you with our products and services, and as otherwise provided in this Privacy Notice. Your data may be used to:

| Business Purpose | Data Categories |
|---|---|
| **Market, sell and provide insurance.** This includes for example:<br>• calculating your premium;<br>• determining your eligibility for a quote;<br>• confirming your identity and service your policy; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Manage your claim.** This includes, for example:<br>• managing your claim, if any;<br>• conducting claims investigations;<br>• conducting medical examinations;<br>• conducting inspections, appraisals;<br>• providing roadside assistance;<br>• providing rental car replacement or repairs; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information |

© 2020 Liberty Mutual Insurance

| | |
|---|---|
| | • Risk data<br>• Claims data |
| **Day to Day Business and Insurance Operations.** This includes, for example:<br>• creating, maintaining, customizing and securing accounts;<br>• supporting day-to-day business and insurance related functions;<br>• doing internal research for technology<br>• development;<br>• marketing and creating products and services;<br>• conducting audits related to a current contact with a consumer and other transactions;<br>• as described at or before the point of gathering personal data or with your authorization; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Security and Fraud Detection.** This includes for example:<br>• detecting security issues;<br>• protecting against fraud or illegal activity, and to comply with regulatory and law enforcement authorities;<br>• managing risk and securing our systems, help to ensure the safety and security of Liberty staff, assets and resources, which<br>• may include physical and virtual access controls and access rights management;<br>• supervisory controls and other monitoring and reviews, as permitted by law; and<br>• emergency and business continuity management; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Regulatory and Legal Requirements.** This includes for example:<br>• controls and access rights management;<br>• to evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of<br>• Liberty's assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal data held by Liberty is among the assets transferred;<br>• exercising and defending our legal rights and positions;<br>• to meet Liberty contract obligations;<br>• to respond to law enforcement requests and as required by applicable law, court order, or governmental regulations;<br>• as otherwise permitted by law. | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |

| | |
|---|---|
| **Improve Your Customer Experience and Our Products.** This includes for example:<br>• improve your customer experience, our products and service;<br>• to provide, support, personalize and develop our website, products and services;<br>• create and offer new products and services; | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Analytics to identify, understand and manage our risks and products.** This includes for example:<br>• conducting analytics to better identify, understand and manage risk and our products; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Customer service and technical support.** This includes for example:<br>• answer questions and provide notifications;<br>• provide customer and technical support; | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |

**How Does Liberty Mutual Share My Data?**

Liberty Mutual does not sell your personal data as defined by the California Consumer Privacy Act.

Liberty Mutual shares personal data of California consumers with the following categories of third parties:

- Liberty Mutual affiliates;
- Service Providers;
- Insurance support organizations;
- Brokers and agents;
- Government entities and institutions (e.g. regulatory, quasi-regulatory, tax or other authorities, law enforcement agencies, courts, arbitrational bodies, and fraud prevention agencies);
- Professional advisors including law firms, accountants, auditors, and tax advisors;
- Advertising networks, data analytics providers and social networks;
- Insurers, re-insurers, policy holders, and claimants; and
- As permitted by law.

Liberty Mutual shares the following categories of personal data regarding California consumers to service providers for business purposes:

| | |
|---|---|
| Identifiers | Personal Data; |
| Protected Classification Characteristics; | Commercial Information; |
| Internet or other similar network activity; | Claims Data; |
| Inferences drawn from other personal information; | Risk Data; |
| Professional, employment, and education information; | |

For information  about how we have shared personal information  in the past twelve (12) months, please go to libertymutual.com/privacy    and click on the link for the California  Supplemental  Privacy Policy.

### What Privacy Rights Do I Have?

The California  Consumer  Privacy Act provides  California  residents  with specific  rights  regarding  personal information.  These rights  are subject to certain  exceptions.  Our response  may be limited  as permitted  under law. For more information  on your rights, please go to libertymutual.com/privacy    and click on the link for the California  Supplemental  Privacy Policy.

### Will Liberty Mutual Update This Privacy Notice?

We reserve the right to makes changes to this notice at any time and for any reason. The updated  version of this policy will be effective once it is accessible. You are responsible for reviewing this policy to stay informed  of any changes or updates.

### Who Do I Contact Regarding Privacy?

If you have any questions  or comments  about this Notice or the Supplemental  CCPA Notice, your rights, or are requesting  the Notice in an alternative  format, please do not hesitate to contact Liberty Mutual at:

| | |
|---|---|
| **Phone:** | 800-344-0197 |
| **Email:** | privacy@libertymutual.com |
| **Postal Address:** | Liberty Mutual Insurance  Company<br>Attn Privacy Office<br>175 Berkeley St 6th Floor<br>Boston MA 02116 |



SNI 36 01 05 20

# OREGON  - TERRORISM  INSURANCE  PREMIUM  DISCLOSURE  AND OPPORTUNITY  TO ELECT COVERAGE

**This notice contains important  information  about the Terrorism  Risk Insurance  Act and its effect  on your policy. Please read it carefully.**

**THE TERRORISM  RISK INSURANCE  ACT**

The Terrorism  Risk Insurance  Act, including  all amendments  ("TRIA"  or the "Act"),  establishes  a program to spread the risk of catastrophic  losses from certain acts of terrorism  between insurers and the federal government.  If an individual  insurer's losses from "certified  acts of terrorism"  exceed a specified  deductible amount,  the government  will generally  reimburse  the insurer  for a percentage  of losses (the "Federal Share")  paid in excess of the deductible,  but only if aggregate  industry  losses from such acts exceed the "Program  Trigger".  An insurer  that has met its insurer  deductible  is not liable for any portion  of losses in excess of $100 billion  per calendar  year. Similarly,  the federal government  is not liable for any losses covered  by the Act that exceed this amount.  If aggregate  insured  losses exceed $100 billion,  losses up to that amount  may be pro-rated,  as determined  by the Secretary of the Treasury.

Beginning  in calendar  year 2020, the Federal Share is 80% and the Program  Trigger  is $200,000,000.

**MANDATORY  OFFER OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM"  AND DISCLOSURE  OF PRE-MIUM**

TRIA requires  insurers  to make coverage  available  for any loss that occurs within  the United  States (or outside  of the U.S. in the case of U.S. missions  and certain  air carriers and vessels), results  from a "certified act of terrorism"   AND that is otherwise  covered  under your policy.

A "certified   act of terrorism"   means:

Any act that is certified  by the Secretary,  of the Treasury,  in consultation   with the Secretary  of Home-land Security,  and the Attorney  General of the United  States

(i)    to be an act of terrorism;

(ii)   to be a violent  act or an act that is dangerous  to

(I)   human  life;

(II)  property;   or

(III) infrastructure;

(iii)  to have resulted  in damage  within  the United  States, or outside  of the United  States in the case of

(I)    an air carrier (as defined  in section  40102 of title  49, United  States Code) or United  States flag vessel (or a vessel based principally   in the United  States, on which  United  States income  tax is paid and whose  insurance  coverage  is subject to regulation  in the United  States); or

(II)  the premises  of a United  States mission;   and

(iv)  to have been committed   by an individual  or individuals  as part of an effort  to coerce  the civilian population  of the United  States or to influence  the policy  or affect  the conduct  of the United  States Government   by coercion.

**REJECTING TERRORISM  INSURANCE  COVERAGE - WHAT YOU MUST  DO**

We have included  in your policy coverage  for losses resulting  from "certified   acts of terrorism"  as defined above.

THE PREMIUM  CHARGE FOR THIS COVERAGE APPEARS ON THE DECLARATIONS  PAGE OF THE POLICY AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOV-ERNMENT UNDER THE ACT. If we are providing  you with  a quote, the premium  charge will  also appear on your quote  as a separate  line item  charge.

SNI 36 01 05 20                     © 2020 Liberty Mutual Insurance                     Page 1 of 2

IF YOU CHOOSE TO REJECT THIS COVERAGE, PLEASE CHECK THE BOX BELOW, SIGN THE ACKNOWL-EDGMENT, AND RETURN THIS FORM TO YOUR AGENT: **Please ensure any rejection is received within thirty (30) days of the effective date of your policy.**

Before making a decision to reject terrorism insurance, refer to the Disclaimer for Standard Fire Policy States located at the end of this Notice.

☐  I hereby reject this offer of coverage. I understand that by rejecting this offer, I will have no coverage for losses arising from "certified acts of terrorism" and my policy will be endorsed accordingly.

Policyholder/Applicant's    Signature                    Print Name                              Date Signed

_____        _____        _____

Named Insured                                        Policy Number

Policy Effective/Expiration    Date

**IF YOU REJECTED THIS COVERAGE, PLEASE RETURN THIS FORM TO YOUR AGENT.**

Note: Certain states (currently CA, GA, IA, IL, ME, MO, NY, NC, NJ, OR, RI, WA, WI and WV) mandate coverage for loss caused by fire following a "certified act of terrorism" in certain types of insurance policies. If you reject TRIA coverage in these states on those policies, you will not be charged any additional premium for that state mandated coverage.

**The summary of the Act and the coverage under your policy contained in this notice is necessarily general in nature. Your policy contains specific terms, definitions, exclusions and conditions. In case of any conflict, your policy language will control the resolution of all coverage questions. Please read your policy carefully.**

If you have any questions regarding this notice, please contact your agent.

SNI 36 01 05 20                    © 2020 Liberty Mutual Insurance                    Page 2 of 2

SNI 90 04 03 18

# OREGON  MARIJUANA   EXCLUSION  - NOTICE  TO POLICYHOLDERS

NO COVERAGE IS PROVIDED BY THIS NOTICE, NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. IF THERE ARE DISCREPANCIES BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

PLEASE READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE COVERAGE INFORMATION. IF YOU HAVE ANY QUESTIONS AFTER REVIEWING THE CHANGES OUTLINED BELOW, PLEASE CONTACT YOUR INSURANCE ADVISOR.

**POTENTIAL REDUCTION OF COVERAGE**

Your policy excludes coverage for marijuana, which is defined in your policy as:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic including but not limited to any of the following containing such THC or cannabinoid:

a. Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

b. Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

   (1) Resin, oil or wax;

   (2) Hash or hemp; or

   (3) Infused liquid or edible marijuana;

whether derived from any plant or part of any plant described above or not.



Liberty Mutual® INSURANCE

**Coverage Is Provided In:**
Ohio Security Insurance Company

Policy Number:
**BLS (22)  63 09 90 57**

Policy Period:
**From 04/15/2021 To 04/15/2022**
*12:01 am Standard Time
at Insured Mailing Location*

## Common Policy Declarations

| Named Insured & Mailing Address | Agent Mailing Address & Phone No. |
|---|---|
| PRIMORDIAL MOUNTAIN, LLC<br>1508 Antelope Rd<br>White City, OR 97503 | (646) 844-9933<br>COVERWALLET INC<br>MSC# 17890<br>PO BOX 6718<br>SOMERSET, NJ 08875-6718 |

**Named Insured Is:** LIMITED LIABILITY COMPANY

**Named Insured Business Is:** FOOD PRODUCTS MFG.-DRY

*In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.*

### SUMMARY OF COVERAGE PARTS AND CHARGES

This policy consists of this Common Policy Declarations page, Common Policy Conditions, Coverage Parts (which consist of coverage forms and other applicable forms and endorsements, if any, issued to form a part of them) and any other forms and endorsements issued to be part of this policy.

| COVERAGE PART | CHARGES |
|---|---|
| **Commercial General Liability** | Redacted |

*Total Charges for all of the above coverage parts:*
*Certified Acts of Terrorism Coverage:* Redacted



Redacted

*Note: This is not a bill*

### IMPORTANT MESSAGES

- This policy is auditable. Please refer to the conditions of the policy for details or contact your agent.

- Notice: The Employment-Related Practices Exclusion CG 21 47 is added to this policy to clarify there is no coverage for liability arising out of employment-related practices. Please read this endorsement carefully.

Issue Date          04/22/21                                    Authorized Representative

*To report a claim, call your Agent or 1-800-366-6446*

DS 70 21 11 16

 **Liberty Mutual**® **INSURANCE**

**Coverage Is Provided In:**
Ohio Security Insurance Company

Policy Number:
**BLS (22) 63 09 90 57**

Policy Period:
**From 04/15/2021 To 04/15/2022**
*12:01 am Standard Time
at Insured Mailing Location*

## Common Policy Declarations

| Named Insured | Agent |
|---|---|
| PRIMORDIAL MOUNTAIN, LLC<br>1508 Antelope Rd<br>White City, OR 97503 | (646) 844-9933<br>COVERWALLET INC<br>MSC# 17890<br>PO BOX 6718<br>SOMERSET, NJ 08875-6718 |

## POLICY FORMS AND ENDORSEMENTS

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| CG 00 01 04 13 | Commercial General Liability Coverage Form - Occurrence |
| CG 21 06 05 14 | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception |
| CG 21 18 10 17 | Oregon - Marijuana Exclusion |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 67 12 04 | Fungi or Bacteria Exclusion |
| CG 21 70 01 15 | Cap on Losses from Certified Acts of Terrorism |
| CG 21 76 01 15 | Exclusion of Punitive Damages Related to a Certified Act of Terrorism |
| CG 21 88 01 15 | Conditional Exclusion of Terrorism Involving Nuclear, Biological or Chemical Terrorism (Relating to Disposition of Federal Terrorism Risk Insurance Act) |
| CG 24 26 04 13 | Amendment of Insured Contract Definition |
| CG 84 99 08 09 | Non-Cumulation Liability Limits Same Occurrence |
| CG 88 10 04 13 | Commercial General Liability Extension |
| CG 88 77 12 08 | Medical Expense At Your Request Endorsement |
| CG 88 86 12 08 | Exclusion - Asbestos Liability |
| IL 00 17 11 98 | Common Policy Conditions |

In witness whereof, we have caused this policy to be signed by our authorized officers.

Mark Touhey
Secretary

David Long
President

*To report a claim, call your Agent or 1-844-325-2467*
DS 70 21 11 16



**Coverage Is Provided In:**

Ohio Security Insurance Company

Policy Number:
**BLS (22)  63 09 90 57**

Policy Period:
**From 04/15/2021 To 04/15/2022**
*12:01 am Standard Time
at Insured Mailing Location*

## Common Policy Declarations

| **Named Insured** | **Agent** |
|---|---|
| PRIMORDIAL MOUNTAIN, LLC | (646) 844-9933 |
| 1508 Antelope Rd | COVERWALLET INC |
| White City, OR 97503 | MSC# 17890 |
| | PO BOX 6718 |
| | SOMERSET, NJ 08875-6718 |

## POLICY FORMS AND ENDORSEMENTS - CONTINUED

This section lists the Forms and Endorsements for your policy. Refer to these documents as needed for detailed information concerning your coverage.

| FORM NUMBER | TITLE |
|---|---|
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 01 42 09 08 | Oregon Changes - Domestic Partnership |
| IL 02 79 09 08 | Oregon Changes - Cancellation and Nonrenewal |

*To report a claim, call your Agent or 1-844-325-2467*

DS 70 21 11 16

| 04/22/21 | 63099057 | CSRTEAM | 430 | GCXFPPNO | INSURED COPY | 001065 | PAGE 17 OF 64 |
|---|---|---|---|---|---|---|---|

This page intentionally left blank.


Liberty Mutual INSURANCE

**Coverage Is Provided In:**
Ohio Security Insurance Company

**Commercial General Liability Declarations**
Basis: Occurrence

Policy Number:
**BLS  (22)  63 09 90 57**

Policy Period:
**From 04/15/2021 To 04/15/2022**
*12:01 am Standard Time*
*at Insured Mailing Location*

| Named Insured | Agent |
|---|---|
| PRIMORDIAL MOUNTAIN, LLC | (646) 844-9933 COVERWALLET INC |

## SUMMARY OF LIMITS AND CHARGES

**Commercial General Liability Limits of Insurance**

| DESCRIPTION | LIMIT |
|---|---|
| Each Occurrence Limit | 1,000,000 |
| Damage To Premises Rented To You Limit (Any One Premises) | 1,000,000 |
| Medical Expense Limit (Any One Person) | 15,000 |
| Personal and Advertising Injury Limit | 1,000,000 |
| General Aggregate Limit (Other than Products - Completed Operations) | 2,000,000 |
| Products - Completed Operations Aggregate Limit | 2,000,000 |

**Explanation of Charges**

| DESCRIPTION | PREMIUM |
|---|---|
| General Liability Schedule Totals | Redacted |
| Policy Writing Minimum Premium Adjustment | |
| Certified Acts of Terrorism Coverage | |

*Total Advance Charges:*

*Note: This is not a bill*

*To report a claim, call your Agent or 1-844-325-2467*

**DS 70 22 01 08**

04/22/21    63099057    CSRTEAM    430    GCXFPPNO    INSURED COPY    001065    PAGE 19 OF 64



**Liberty Mutual** INSURANCE

*Coverage Is Provided In:*
Ohio Security Insurance Company

Policy Number:
**BLS   (22)  63 09 90 57**

Policy Period:
**From 04/15/2021 To 04/15/2022**
*12:01 am Standard Time*
*at Insured Mailing Location*

**Commercial   General   Liability**
**Declarations   Schedule**

| Named Insured | Agent |
|---|---|
| PRIMORDIAL MOUNTAIN, LLC | (646) 844-9933<br>COVERWALLET INC |

## SUMMARY OF CLASSIFICATIONS - BY LOCATION

**0001    1508 Antelope Rd, White City, OR 97503**

**Insured:** PRIMORDIAL MOUNTAIN, LLC

**CLASSIFICATION -** 53374
Food Products Mfg. - Dry

| COVERAGE DESCRIPTION | PREMIUM BASED ON - | RATED / PER 1,000 | PREMIUM |
|---|---|---|---|
| Premise/Operations<br>    Minimum Premium Adjustment | 45,000 Dollars Of Gross Sales | Redacted | |
| | | *Total:* | |
| Products/Completed Operations<br>    Minimum Premium Adjustment | | | |
| | | *Total:* | |
| **Commercial General Liability Schedule Total** | | | |

*To report a claim, call your Agent or 1-844-325-2467*

DS 70 23 10 16

# COMMERCIAL  GENERAL LIABILITY COVERAGE FORM



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V -** Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**  The amount we will pay for damages is limited as described in Section **III -** Limits Of Insurance; and

        **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II -** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II -** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II -** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of



the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.   **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.    Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.    War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.    Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.



  © Insurance Services Office, Inc., 2012

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C - MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletics contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

CG 00 01 04 13 © Insurance Services Office, Inc., 2012 Page 9 of 17

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.



2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

   b. **Excess Insurance**

      (1) This insurance is excess over:

          (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

              (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

              (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

              (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

              (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.** **Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.** **Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7.** **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.** **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.** **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

CG 00 01 04 13                © Insurance Services Office, Inc., 2012                Page 13 of 17

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

Page 14 of 17                    © Insurance Services Office, Inc., 2012                    CG 00 01 04 13

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or



**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 06 05 14    © Insurance Services Office, Inc., 2013    Page 1 of 1

COMMERCIAL  GENERAL LIABILITY
CG 21 18 10 17

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON  - MARIJUANA   EXCLUSION

This endorsement  modifies  insurance  provided  under  the following:

COMMERCIAL  GENERAL LIABILITY  COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY  COVERAGE PART



**A.** The following  exclusion  is added:

This insurance  does not apply  to:

**1.** "Bodily  injury",  "property  damage"  or "personal  and advertising  injury"  arising out  of,  caused  by,  or attributable  to, whether  in whole  or in part, the follow- ing:

   **a.** The design,  manufacture,  distribu- tion, sale, serving, furnishing,  use or possession  of "marijuana";

   **b.** The actual,  alleged,  threatened  or suspected  inhalation,  ingestion, ab- sorption  or consumption  of, contact with,  exposure  to, existence  of, or presence  of "marijuana";   or

**2.** "Property  damage"  to "marijuana".

This exclusion  applies  even  if the claims against  any insured  allege negligence  or oth- er wrongdoing  in the supervision,  hiring, em- ployment,  training  or monitoring  of others by that  insured,  if the "occurrence"  which caused  the "bodily  injury"  or "property  dam- age",  or the offense  which  caused  the "per- sonal  and advertising  injury",  involved  that which  is described  in Paragraph  **A.1.** or **A.2.** above.

However,  this exclusion  does not apply to any "marijuana"   that  is not designed,  manufac- tured, distributed,  sold, served  or furnished for bodily:

   **a.** Ingestion;

   **b.** Inhalation;

   **c.** Absorption;   or

   **d.** Consumption.

**B.** The following  definition  is added  to the **Defi- nitions** section:

"Marijuana":

**1.** Means:

   Any  good  or product  that consists  of or contains   any   amount   of Tetrahydrocannabinol   (THC) or any other cannabinoid,  regardless  of whether  any such THC or cannabinoid  is natural  or synthetic.

**2.** Paragraph  **B.1.** above includes,  but is not limited  to, any of the following   contain- ing such THC or cannabinoid:

   **a.** Any plant  of the genus  Cannabis  L., or any part  thereof,  such as seeds, stems,  flowers,  stalks  and roots; or

   **b.** Any  compound,  byproduct,  extract, derivative,  mixture  or combination, such as, but not limited  to:

      **(1)** Resin, oil or wax;

      **(2)** Hash or hemp;  or

      **(3)** Infused  liquid  or edible  marijua- na;

   whether  derived  from  any plant  or part of any plant  set forth  in Para- graph **B.2.a.** above  or not.

COMMERCIAL  GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT  - RELATED PRACTICES EXCLUSION

This endorsement  modifies  insurance  provided  under  the following:

COMMERCIAL  GENERAL LIABILITY  COVERAGE PART

**A.** The following  exclusion  is added  to Paragraph **2., Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance  does not apply  to:

"Bodily  injury"  to:

**(1)** A person  arising  out of any:

    **(a)** Refusal to employ  that person;

    **(b)** Termination  of that person's employment; or

    **(c)** Employment-related  practices,  policies,  acts  or  omissions,  such  as coercion,  demotion,  evaluation, reassignment,  discipline,  defamation,  harassment,  humiliation,  discrimination  or malicious  prosecution directed  at that person;  or

**(2)** The spouse, child, parent, brother or sister  of  that  person  as  a  consequence  of "bodily  injury"  to  that  person  at whom any  of  the  employment-related  practices described  in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion  applies:

**(1)** Whether  the  injury-causing  event  described  in Paragraphs **(a), (b)** or **(c)** above occurs  before  employment,  during  employment  or  after  employment  of  that person;

**(2)** Whether the insured  may be liable  as an employer  or in any other capacity;  and

**(3)** To any obligation  to share damages  with or  repay  someone  else  who  must  pay damages  because  of the injury.

**B.** The following  exclusion  is added  to Paragraph **2., Exclusions** of Section **I - Coverage B - Personal And Advertising  Injury Liability:**

This insurance  does not apply  to:

"Personal  and advertising  injury"  to:

**(1)** A person  arising  out of any:

    **(a)** Refusal to employ  that person;

    **(b)** Termination  of that person's employment; or

    **(c)** Employment-related  practices,  policies, acts or omissions,  such as coercion,  demotion,  evaluation, reassignment,  discipline,  defamation,  harassment,  humiliation,  discrimination  or malicious  prosecution directed  at that person;  or

**(2)** The spouse, child, parent, brother or sister  of  that  person  as  a  consequence  of "personal  and advertising  injury"  to that person at whom  any of the employmentrelated  practices  described  in paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion  applies:

**(1)** Whether  the  injury-causing  event  described  in Paragraphs **(a), (b)** or **(c)** above occurs  before  employment,  during  employment  or  after  employment  of  that person;

**(2)** Whether  the insured  may be liable  as an employer  or in any other capacity;  and

**(3)** To any obligation  to share damages  with or  repay  someone  else  who  must  pay damages  because  of the injury.

CG 21 47 12 07           © ISO Properties,  Inc., 2006           Page 1 of 1

COMMERCIAL  GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI  OR BACTERIA EXCLUSION

This endorsement  modifies  insurance  provided  under  the following:

COMMERCIAL  GENERAL LIABILITY  COVERAGE PART

**A.** The following  exclusion  is added to Paragraph **2.** Exclusions  of **Section I - Coverage  A - Bodily Injury And Property Damage Liability:**

**2., Exclusions**

This insurance  does not apply  to:

**Fungi or Bacteria**

**a.** "Bodily  injury"  or "property  damage" which  would  not have occurred,  in whole  or in part, but for the actual, alleged or threatened  inhalation of, inges- tion of, contact with,  exposure  to, exis- tence of, or presence  of, any "fungi"  or bacteria on or within  a building  or struc- ture, including  its contents,  regardless of whether  any other  cause, event, ma- terial or product  contributed  concurrent- ly or in any sequence  to such  injury  or damage.

**b.** Any loss, cost or expenses  arising  out of the abating,  testing  for, monitoring, cleaning  up, removing,  containing, treating,  detoxifying,  neutralizing,  re- mediating  or disposing  of, or in any way responding  to, or assessing  the effects of, "fungi"  or bacteria,  by any insured or by any other  person or entity.

This exclusion  does not apply to any "fungi" or bacteria  that are, are on, or are contained in, a good  or product  intended  for bodily consumption.

**B.** The following  exclusion  is added to Paragraph **2.** Exclusions  of **Section I - Coverage  B - Personal And Advertising  Injury Liability:**

**2. Exclusions**

This insurance  does not apply  to:

**Fungi or Bacteria**

**a.** "Personal and advertising  injury"  which would  not have taken place, in whole or in part, but for the actual, alleged  or threatened  inhalation of, ingestion  of, contact with,  exposure  to, existence of, or presence  of any "fungi"  or bacteria on or within  a building  or structure,  in- cluding  its contents,  regardless  of whether  any other  cause, event, mate- rial or product  contributed  concurrently or in any sequence  to such injury.

**b.** Any loss, cost or expense  arising  out of the abating,  testing  for, monitoring, cleaning  up, removing,  containing, treating,  detoxifying,  neutralizing,  re- mediating  or disposing  of, or in any way responding  to, or assessing  the effects of, "fungi"  or bacteria,  by any insured or by any other  person or entity.

**C.** The following  definition  is added to the **Defini- tions** Section:

"Fungi"  means any type or form of fungus, in- cluding  mold or mildew  and any mycotoxins, spores, scents or by-products  produced  or re- leased by fungi.

CG 21 67 12 04                ©ISO Properties,  Inc., 2003                Page 1 of 1

COMMERCIAL  GENERAL LIABILITY
CG 21 70 01 15

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON  LOSSES FROM  CERTIFIED ACTS OF TERRORISM

This endorsement  modifies  insurance  provided  under the following:

COMMERCIAL  GENERAL LIABILITY  COVERAGE PART
LIQUOR LIABILITY  COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY  COVERAGE PART
POLLUTION  LIABILITY  COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY  COVERAGE PART
RAILROAD PROTECTIVE LIABILITY  COVERAGE PART
UNDERGROUND  STORAGE TANK  POLICY

**A.** If aggregate  insured  losses attributable  to terrorist  acts certified  under the federal  Terrorism Risk Insurance  Act exceed $100 billion  in a calendar  year and we have met our insurer deductible  under the Terrorism  Risk Insurance Act, we shall  not be liable  for the payment  of any portion  of the amount  of such losses that exceeds $100 billion,  and in such case insured  losses up to that amount  are subject  to pro rata allocation  in accordance with  procedures  established  by the Secretary of the Treasury.

"Certified  act of terrorism"  means an act that is certified  by the Secretary  of the Treasury, in accordance  with  the provisions  of the federal Terrorism  Risk Insurance  Act, to be an act of terrorism  pursuant  to such Act. The criteria contained  in the Terrorism  Risk Insurance  Act for a "certified  act of terrorism"  include  the following:

**1.** The act resulted  in insured  losses in excess of $5 million  in the aggregate, attributable  to all types of insurance  subject  to the Terrorism  Risk Insurance  Act; and

**2.** The act is a violent  act or an act that is dangerous  to human  life, property  or infrastructure  and is committed  by an individual  or individuals  as part of an effort to coerce  the civilian  population  of the United  States or to influence  the policy or affect  the conduct  of the United  States Government  by coercion.

**B.** The terms and limitations  of any terrorism  exclusion, or the inapplicability  or omission  of a terrorism  exclusion,  do not serve  to create coverage  for injury  or damage  that is otherwise  excluded  under this Coverage  Part.

COMMERCIAL GENERAL LIABILITY
CG 21 76 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
# RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:



COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

CG 21 76 01 15 © Insurance Services Office, Inc., 2015 Page 1 of 1

COMMERCIAL  GENERAL LIABILITY
CG 21 88 01 15

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL  EXCLUSION  OF TERRORISM  INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL  TERRORISM (RELATING  TO DISPOSITION   OF FEDERAL TERRORISM  RISK INSURANCE  ACT)

This endorsement  modifies  insurance  provided  under  the following:

COMMERCIAL  GENERAL LIABILITY  COVERAGE PART
LIQUOR LIABILITY  COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY  COVERAGE PART
POLLUTION  LIABILITY  COVERAGE PART
PRODUCTS/COMPLETED  OPERATIONS LIABILITY  COVERAGE PART
RAILROAD PROTECTIVE LIABILITY  COVERAGE PART
UNDERGROUND  STORAGE TANK POLICY

A.  **Applicability  Of The Provisions  Of This En-dorsement**

1.  The provisions  of this endorsement  become  applicable  commencing  on the date when  any one or more of the following  first occurs. But if your policy (meaning  the policy period in which this endorsement  applies) begins  after such date, then  the provisions of this endorsement  become  applicable  on the date your policy begins.

a.  The federal Terrorism  Risk Insurance  Program  ("Program"),  established  by the Terrorism  Risk Insurance  Act, has terminated  with respect to the type of insurance provided  under  this Coverage  Part or Policy; or

b.  A renewal,  extension  or replacement of the Program  has become  effective without  a requirement  to make terrorism  coverage  available  to you and with  revisions  that:

(1)  Increase  our statutory  percentage deductible  under the Program  for terrorism  losses. (That deductible  determines  the amount of all certified  terrorism losses we must pay in a calendar year, before the federal government  shares in subsequent payment  of certified  terrorism losses.); or

(2)  Decrease  the federal  government's  statutory  percentage share  in potential  terrorism losses above such deductible; or

(3)  Redefine terrorism  or make insurance  coverage  for terrorism subject  to provisions  or requirements  that  differ  from those that  apply  to other  types  of events  or occurrences  under this policy.

2.  If the provisions of this endorsement  become  applicable,  such provisions:

a.  Supersede  any terrorism  endorsement  already  endorsed  to this policy that addresses "certified  acts of terrorism"  and/or "other acts of terrorism",  but only with  respect to an incident(s)   of terrorism  (however defined)  which  results  in injury or damage that occurs on or after the date when  the provisions of this endorsement  become  applicable  (for claims  made policies,  such an endorsement  is superseded  only with respect  to an incident  of terrorism (however  defined)  that results  in a claim  for injury or damage first being  made on or after the date when the provisions  of this endorsement become  applicable); and

CG 21 88 01 15                    © Insurance  Services  Office, Inc., 2015                    **Page 1 of 2**



**b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.**

**3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

CG 24 26 04 13 © Insurance Services Office, Inc., 2012 Page 1 of 1

COMMERCIAL  GENERAL LIABILITY
CG 84 99 08 09

**THIS  ENDORSEMENT  CHANGES  THE  POLICY. PLEASE READ IT CAREFULLY.**

# NON-CUMULATION    OF  LIABILITY  LIMITS
# (SAME  OCCURRENCE)



This endorsement  modifies  insurance  provided  under  the following:

COMMERCIAL  GENERAL LIABILITY  COVERAGE PART

The following   is added  to Paragraph  **5.** under  **Section  III - Limits Of Insurance:**

Non-Cumulation   of Liability  - Same  Occurrence  - If one "occurrence"   causes "bodily  injury"  or "property damage"  during  the policy  period  and during  the policy  period  of one or more  prior, or future,  general liability  policies  issued  to you  by us, then  this  policy's  Each Occurrence  Limit  will  be reduced  by the amount  of each payment  made  by us under  the other  policies  because  of such "occurrence."

For purposes  of this endorsement,   the term  "us"  also includes  all policies  issued  by any company  within the Liberty  Mutual  Agency  Markets  division  of Liberty  Mutual  Group.

©2010 Liberty  Mutual Insurance Company. All rights reserved.
**CG 84 99 08 09**          Includes copyrighted  material of Insurance Services Office, Inc., with its permission .          **Page 1 of 1**

COMMERCIAL  GENERAL LIABILITY
CG 88 10 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL  GENERAL LIABILITY EXTENSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### INDEX

| SUBJECT | PAGE |
|---|---|
| NON-OWNED AIRCRAFT | 2 |
| NON-OWNED WATERCRAFT | 2 |
| PROPERTY DAMAGE LIABILITY - ELEVATORS | 2 |
| EXTENDED DAMAGE TO PROPERTY RENTED TO YOU (Tenant's Property Damage) | 2 |
| MEDICAL PAYMENTS EXTENSION | 3 |
| EXTENSION OF SUPPLEMENTARY PAYMENTS - COVERAGES A AND B | 3 |
| ADDITIONAL INSUREDS - BY CONTRACT, AGREEMENT OR PERMIT | 3 |
| PRIMARY AND NON-CONTRIBUTORY- ADDITIONAL INSURED EXTENSION | 5 |
| ADDITIONAL INSUREDS - EXTENDED PROTECTION OF YOUR "LIMITS OF INSURANCE" | 6 |
| WHO IS AN INSURED - INCIDENTAL MEDICAL ERRORS/MALPRACTICE AND WHO IS AN INSURED - FELLOW EMPLOYEE EXTENSION - MANAGEMENT EMPLOYEES | 6 |
| NEWLY FORMED OR ADDITIONALLY ACQUIRED ENTITIES | 7 |
| FAILURE TO DISCLOSE HAZARDS AND PRIOR OCCURRENCES | 7 |
| KNOWLEDGE OF OCCURRENCE, OFFENSE, CLAIM OR SUIT | 7 |
| LIBERALIZATION CLAUSE | 7 |
| BODILY INJURY REDEFINED | 7 |
| EXTENDED PROPERTY DAMAGE | 8 |
| WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US - WHEN REQUIRED IN A CONTRACT OR AGREEMENT WITH YOU | 8 |

© 2013 Liberty Mutual Insurance

CG 88 10 04 13     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 1 of 8

Page 52 of 68

With respect to coverage afforded by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**A. NON-OWNED AIRCRAFT**

Under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability,** exclusion **g. Aircraft, Auto Or Watercraft** does not apply to an aircraft provided:

1. It is not owned by any insured;

2. It is hired, chartered or loaned with a trained paid crew;

3. The pilot in command holds a currently effective certificate, issued by the duly constituted authority of the United States of America or Canada, designating her or him a commercial or airline pilot; and

4. It is not being used to carry persons or property for a charge.

However, the insurance afforded by this provision does not apply if there is available to the insured other valid and collectible insurance, whether primary, excess (other than insurance written to apply specifically in excess of this policy), contingent or on any other basis, that would also apply to the loss covered under this provision.

**B. NON-OWNED WATERCRAFT**

Under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability,** Subparagraph **(2)** of exclusion **g. Aircraft, Auto Or Watercraft** is replaced by the following:

This exclusion does not apply to:

**(2)** A watercraft you do not own that is:

**(a)** Less than 52 feet long; and

**(b)** Not being used to carry persons or property for a charge.

**C. PROPERTY DAMAGE LIABILITY - ELEVATORS**

1. Under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability,** Subparagraphs **(3), (4)** and **(6)** of exclusion **j. Damage To Property** do not apply if such "property damage" results from the use of elevators. For the purpose of this provision, elevators do not include vehicle lifts. Vehicle lifts are lifts or hoists used in automobile service or repair operations.

2. The following is added to **Section IV - Commercial General Liability Conditions,** Condition **4. Other Insurance,** Paragraph **b. Excess Insurance:**

The insurance afforded by this provision of this endorsement is excess over any property insurance, whether primary, excess, contingent or on any other basis.

**D. EXTENDED DAMAGE TO PROPERTY RENTED TO YOU (Tenant's Property Damage)**

If Damage To Premises Rented To You is not otherwise excluded from this Coverage Part:

1. Under Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability:**

   **a.** The fourth from the last paragraph of exclusion **j. Damage To Property** is replaced by the following:

   Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire, lightning, explosion, smoke, or leakage from an automatic fire protection system) to:

   **(i)** Premises rented to you for a period of 7 or fewer consecutive days; or

   **(ii)** Contents that you rent or lease as part of a premises rental or lease agreement for a period of more than 7 days.

   Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" to contents of premises rented to you for a period of 7 or fewer consecutive days.

   A separate limit of insurance applies to this coverage as described in **Section III - Limits of Insurance.**



© 2013 Liberty Mutual Insurance

**CG 88 10 04 13**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 2 of 8**

**b.** The last paragraph of subsection **2. Exclusions** is replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by fire, lightning, explosion, smoke or leakage from automatic fire protection systems to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance.**

**2.** Paragraph **6.** under **Section III - Limits Of Insurance** is replaced by the following:

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to:

**a.** Any one premise:

**(1)** While rented to you; or

**(2)** While rented to you or temporarily occupied by you with permission of the owner for damage by fire, lightning, explosion, smoke or leakage from automatic protection systems; or

**b.** Contents that you rent or lease as part of a premises rental or lease agreement.

**3.** As regards coverage provided by this provision **D. EXTENDED DAMAGE TO PROPERTY RENTED TO YOU (Tenant's Property Damage) -** Paragraph **9.a.** of **Definitions** is replaced with the following:

**9.a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning, explosion, smoke, or leakage from automatic fire protection systems to premises while rented to you or temporarily occupied by you with the permission of the owner, or for damage to contents of such premises that are included in your premises rental or lease agreement, is not an "insured contract".

**E. MEDICAL PAYMENTS EXTENSION**

If **Coverage C Medical Payments** is not otherwise excluded, the Medical Payments provided by this policy are amended as follows:

Under Paragraph **1. Insuring Agreement** of **Section I - Coverage C - Medical Payments,** Subparagraph **(b)** of Paragraph **a.** is replaced by the following:

**(b)** The expenses are incurred and reported within three years of the date of the accident; and

**F. EXTENSION OF SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** Under **Supplementary Payments - Coverages A** and **B,** Paragraph **1.b.** is replaced by the following:

**b.** Up to **$3,000** for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**2.** Paragraph **1.d.** is replaced by the following:

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to **$500** a day because of time off from work.

**G. ADDITIONAL INSUREDS - BY CONTRACT, AGREEMENT OR PERMIT**

**1.** Paragraph **2.** under **Section II - Who Is An Insured** is amended to include as an insured any person or organization whom you have agreed to add as an additional insured in a written contract, written agreement or permit. Such person or organization is an additional insured but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by:

**a.** Your acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your on going operations for the additional insured that are the subject of the written contract or written agreement provided that the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" is committed, subsequent to the signing of such written contract or written agreement; or

© 2013 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CG 88 10 04 13                                                                                                          Page 3 of 8

**b.** Premises or facilities rented by you or used by you; or

**c.** The maintenance, operation or use by you of equipment rented or leased to you by such person or organization; or

**d.** Operations performed by you or on your behalf for which the state or political subdivision has issued a permit subject to the following additional provisions:

    **(1)** This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the operations performed for the state or political subdivision;

    **(2)** This insurance does not apply to "bodily injury" or "property damage" included within the "completed operations hazard".

    **(3)** Insurance applies to premises you own, rent, or control but only with respect to the following hazards:

        **(a)** The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners, or decorations and similar exposures; or

        **(b)** The construction, erection, or removal of elevators; or

        **(c)** The ownership, maintenance, or use of any elevators covered by this insurance.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to Paragraph **1.a.** above, a person's or organization's status as an additional insured under this endorsement ends when:

    **(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    **(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

With respect to Paragraph **1.b.** above, a person's or organization's status as an additional insured under this endorsement ends when their written contract or written agreement with you for such premises or facilities ends.

With respects to Paragraph **1.c.** above, this insurance does not apply to any "occurrence" which takes place after the equipment rental or lease agreement has expired or you have returned such equipment to the lessor.

The insurance provided by this endorsement applies only if the written contract or written agreement is signed prior to the "bodily injury" or "property damage".

We have no duty to defend an additional insured under this endorsement until we receive written notice of a "suit" by the additional insured as required in Paragraph **b.** of Condition **2. Duties In the Event Of Occurrence, Offense, Claim Or Suit** under **Section IV - Commercial General Liability Conditions.**



© 2013 Liberty Mutual Insurance

**CG 88 10 04 13**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 4 of 8

Page 55 of 68

2.  With respect to the insurance provided by this endorsement, the following are added to Paragraph **2. Exclusions** under **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

a.  "Bodily injury" or "property damage" arising from the sole negligence of the additional insured.

b.  "Bodily injury" or "property damage" that occurs prior to you commencing operations at the location where such "bodily injury" or "property damage" occurs.

c.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    (1) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (2) Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services.

d.  "Bodily injury" or "property damage" occurring after:

    (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    (2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

e.  Any person or organization specifically designated as an additional insured for ongoing operations by a separate **ADDITIONAL INSURED -OWNERS, LESSEES OR CONTRACTORS** endorsement issued by us and made a part of this policy.

3.  With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

a.  Required by the contract or agreement; or

b.  Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declaratio ns.

## H.  PRIMARY AND NON-CONTRIBUTORY ADDITIONAL INSURED EXTENSION

This provision applies to any person or organization who qualifies as an additional insured under any form or endorsement under this policy.

Condition **4. Other Insurance of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:

a.  The following is added to Paragraph **a. Primary Insurance:**

If an additional insured's policy has an Other Insurance provision making its policy excess, and you have agreed in a written contract or written agreement to provide the additional insured coverage on a primary and noncontributory basis, this policy shall be primary and we will not seek contribution from the additional insured's policy for damages we cover.

© 2013 Liberty Mutual Insurance

CG 88 10 04 13          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 5 of 8

**b.** The following is added to Paragraph **b. Excess Insurance:**

When a written contract or written agreement, other than a premises lease, facilities rental contract or agreement, an equipment rental or lease contract or agreement, or permit issued by a state or political subdivision between you and an additional insured does not require this insurance to be primary or primary and non-contributory, this insurance is excess over any other insurance for which the additional insured is designated as a Named Insured.

Regardless of the written agreement between you and an additional insured, this insurance is excess over any other insurance whether primary, excess, contingent or on any other basis for which the additional insured has been added as an additional insured on other policies.



**I.    ADDITIONAL INSUREDS - EXTENDED PROTECTION OF YOUR "LIMITS OF INSURANCE"**

This provision applies to any person or organization who qualifies as an additional insured under any form or endorsement under this policy.

**1.**    The following is added to Condition **2. Duties In The Event Of Occurrence, Offense, Claim or Suit:**

An additional insured under this endorsement will as soon as practicable:

**a.**    Give written notice of an "occurrence" or an offense that may result in a claim or "suit" under this insurance to us;

**b.**    Tender the defense and indemnity of any claim or "suit" to all insurers whom also have insurance available to the additional insured; and

**c.**    Agree to make available any other insurance which the additional insured has for a loss we cover under this Coverage Part.

**d.**    We have no duty to defend or indemnify an additional insured under this endorsement until we receive written notice of a "suit" by the additional insured.

**2.**    The limits of insurance applicable to the additional insured are those specified in a written contract or written agreement or the limits of insurance as stated in the Declarations of this policy and defined in **Section III - Limits of Insurance** of this policy, whichever are less. These limits are inclusive of and not in addition to the limits of insurance available under this policy.

**J.    WHO IS AN INSURED - INCIDENTAL MEDICAL ERRORS / MALPRACTICE**
**WHO IS AN INSURED - FELLOW EMPLOYEE EXTENSION - MANAGEMENT EMPLOYEES**

Paragraph **2.a.(1)** of **Section II - Who Is An Insured** is replaced with the following:

**(1)**    "Bodily injury" or "personal and advertising injury":

**(a)**    To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)**    To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1) (a)** above;

**(c)**    For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1) (a)** or **(b)** above; or

**(d)**    Arising out of his or her providing or failing to provide professional health care services. However, if you are not in the business of providing professional health care services or providing professional health care personnel to others, or if coverage for providing professional health care services is not otherwise excluded by separate endorsement, this provision (Paragraph **(d)**) does not apply.

Paragraphs **(a)** and **(b)** above do not apply to "bodily injury" or "personal and advertising injury" caused by an "employee" who is acting in a supervisory capacity for you. Supervisory capacity as used herein means the "employee's" job responsibilities assigned by you, includes the direct supervision of other "employees" of yours. However, none of these "employees" are insureds for "bodily injury" or "personal and

© 2013 Liberty Mutual Insurance

CG 88 10 04 13          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 6 of 8

advertising injury" arising out of their willful conduct, which is defined as the purposeful or willful intent to cause "bodily injury" or "personal and advertising injury", or caused in whole or in part by their intoxication by liquor or controlled substances.

The coverage provided by provision **J.** is excess over any other valid and collectable insurance available to your "employee".

**K.   NEWLY FORMED OR ADDITIONALLY ACQUIRED ENTITIES**

Paragraph **3.** of **Section II - Who Is An Insured** is replaced by the following:

3.   Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.   Coverage under this provision is afforded only until the expiration of the policy period in which the entity was acquired or formed by you;

b.   Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.   Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

d.   Records and descriptions of operations must be maintained by the first Named Insured.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations or qualifies as an insured under this provision.

**L.   FAILURE TO DISCLOSE HAZARDS AND PRIOR OCCURRENCES**

Under **Section IV - Commercial General Liability Conditions,** the following is added to Condition **6. Representations:**

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

**M.   KNOWLEDGE OF OCCURRENCE, OFFENSE, CLAIM OR SUIT**

Under **Section IV - Commercial General Liability Conditions,** the following is added to Condition **2. Duties In The Event of Occurrence, Offense, Claim Or Suit:**

Knowledge of an "occurrence", offense, claim or "suit" by an agent, servant or "employee" of any insured shall not in itself constitute knowledge of the insured unless an insured listed under Paragraph **1.** of **Section II - Who Is An Insured** or a person who has been designated by them to receive reports of "occurrences", offenses, claims or "suits" shall have received such notice from the agent, servant or "employee".

**N.   LIBERALIZATION CLAUSE**

If we revise this Commercial General Liability Extension Endorsement to provide more coverage without additional premium charge, your policy will automatically provide the coverage as of the day the revision is effective in your state.

**O.   BODILY INJURY REDEFINED**

Under **Section V - Definitions,** Definition **3.** is replaced by the following:

3.   "Bodily Injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

©  2013 Liberty Mutual Insurance

**CG 88 10 04 13**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 7 of 8**

**P.　EXTENDED PROPERTY DAMAGE**

**Exclusion a.** of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

a.　**Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**Q.　WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US - WHEN REQUIRED IN A CONTRACT OR AGREEMENT WITH YOU**



Under **Section IV - Commercial General Liability Conditions,** the following is added to Condition **8. Transfer Of Rights Of Recovery Against Others To Us:**

We waive any right of recovery we may have against a person or organization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard" provided:

1.　You and that person or organization have agreed in writing in a contract or agreement that you waive such rights against that person or organization; and

2.　The injury or damage occurs subsequent to the execution of the written contract or written agreement.

©　2013 Liberty Mutual Insurance

**CG 88 10 04 13**　　　Includes copyrighted material of Insurance Services Office, Inc., with its permission.　　　**Page 8 of 8**

COMMERCIAL  GENERAL LIABILITY
CG 88 77 12 08

**THIS  ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MEDICAL  EXPENSE AT YOUR  REQUEST ENDORSEMENT

This endorsement  modifies  insurance  provided  under  the following:

COMMERCIAL  GENERAL LIABILITY  COVERAGE PART

The following   is added  to **Section  I - Coverage  C - Medical  Payments:**

If **Medical  Payments** or **Medical  Expenses** are not  otherwise   excluded   from  the policy,  medical  expenses will  be paid  only  if an insured  has requested  that  we pay such  expenses.

---

**CG 88 77 12 08**        Includes Copyrighted Material of ISO Properties, Inc., with  its permission.            **Page 1 of 1**

**COMMERCIAL  GENERAL LIABILITY**
**CG 88 86 12 08**

**THIS  ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION  - ASBESTOS  LIABILITY

This endorsement  modifies  insurance  provided  under  the following:

> COMMERCIAL  GENERAL LIABILITY  COVERAGE PART
> OWNERS AND  CONTRACTORS PROTECTIVE LIABILITY  COVERAGE PART
> POLLUTION  LIABILITY  COVERAGE PART
> PRODUCTS AND  COMPLETED OPERATIONS COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY  COVERAGE PART

This insurance  does not apply  to:

1.  "Bodily  injury",  "property  damage" or "personal  and advertising  injury"  arising,  in whole  or in part, either  directly  or indirectly  out of the manufacture,  storage,  processing,  mining,  use, sale, installation, removal,  disposal,  distribution,  handling,  inhalation,  ingestion,  absorption,  or existence of, exposure to or contact  with  asbestos,  asbestos contained  in goods,  products  or materials,  asbestos  fibers or asbestos dust;  or

2.  Any  loss, cost or expense  arising  out of any:

    a.  Request, demand,  order,  or statutory  or regulatory  requirement  that any insured  or others  test for, monitor,  clean up, remove,  contain,  treat, detoxify  or neutralize,  or in any way respond  to, or assess the effects  of asbestos,  asbestos  contained  in goods,  products  or materials,  asbestos  fibers or asbestos  dust;  or

    b.  Claim  or "suit"  by or on behalf  of a governmental  authority  for damages  because of testing  for, monitoring,  cleaning  up, removing,  containing,  treating,  detoxifying  or neutralizing,  or in any way responding  to, or assessing  the effects  of asbestos,  asbestos  contained  in goods,  products  or materials,  asbestos  fibers  or asbestos  dust.

# COMMON   POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION   OF   YOUR   BOOKS   AND   RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.



If you die, your rights and duties under this policy will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

© ISO Properties, Inc., 2007

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 01 42 09 08

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON  CHANGES  - DOMESTIC  PARTNERSHIP

This endorsement  modifies  insurance  provided  under  the  following:

COMMERCIAL  AUTOMOBILE  COVERAGE PART
COMMERCIAL  GENERAL LIABILITY  COVERAGE PART
COMMERCIAL  LIABILITY  UMBRELLA  COVERAGE PART
ELECTRONIC DATA  LIABILITY  COVERAGE PART
EMPLOYMENT-RELATED  PRACTICES LIABILITY  COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA  LIABILITY  POLICY
LIQUOR LIABILITY  COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY  COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY  COVERAGE PART
POLLUTION  LIABILITY  COVERAGE PART
PRODUCT WITHDRAWAL  COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY  COVERAGE PART
UNDERGROUND  STORAGE TANK  POLICY

**A.** The term "spouse"  is replaced  by the following:

Spouse  or  individual  who  is  in  a  domestic partnership  recognized  under  Oregon  law.

**B.** Under  the  Commercial  Auto  Coverage  Part, the term "family  member" is replaced  by the following:

"Family  member"  means  a person  related  to the:

**1.** Individual  Named  Insured  by  blood, adoption,  marriage  or  domestic  partnership recognized  under  Oregon  law, who is  a resident  of  such  Named  Insured's household,  including  a ward  or foster child; or

**2.** Individual  named  in  the  Schedule  by blood,  adoption,  marriage  or  domestic partnership  recognized  under  Oregon law, who is a resident  of the individual's household,  including  a ward  or foster child,  if the Drive Other Care Coverage - Broadened  Coverage For Named Individual Endorsement  is attached.

**C.** With  respect  to  coverage  for  the  ownership, maintenance,  or  use  of "covered  autos" provided  under  the  Commercial  Liability  Umbrella Coverage  Part, the  term "family  member" is replaced  by the following:

"Family  member"  means a person  related to you by blood, adoption,  marriage or domestic partnership  recognized  under  Oregon  law, who is a resident  of your household,  including a ward  or foster  child.

IL 02 79 09 08

**THIS ENDORSEMENT  CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OREGON  CHANGES  - CANCELLATION
# AND  NONRENEWAL

This endorsement  modifies  insurance  provided  under  the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERGE PART
COMMERCIAL  AUTOMOBILE  COVERAGE PART
COMMERCIAL  GENERAL LIABILITY  COVERAGE PART
COMMERCIAL  INLAND MARINE COVERAGE PART
COMMERCIAL  PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED  PRACTICES LIABILITY  COVERAGE PART
EQUIPMENT BREAKDOWN  COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY  COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY  COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY  COVERAGE PART



**A.** Paragraph  **2.** of the **Cancellation** Common Policy Condition  is replaced  by the following:

**2.** If this policy  has been in effect for:

**a.** Fewer than  60 days  and is not  a renewal  policy,  we may  cancel  for any  reason.

**b.** 60 days  or more  or is a renewal  policy,  we may  cancel  only  for one or more of the following  reasons:

**(1)** Nonpayment  of premium;

**(2)** Fraud or material  misrepresentation made  by you  or with  your knowledge  in obtaining  the policy, continuing  the policy  or in presenting  a claim  under  the policy;

**(3)** Substantial  increase  in the risk of loss  after  insurance  coverage has been  issued  or renewed, including  but not limited  to an increase  in exposure  due to rules, legislation  or court decision;

**(4)** Failure  to comply  with reasonable  loss control  recommendations;

**(5)** Substantial  breach  of contractual  duties,  conditions  or warranties;

**(6)** Determination  by the commissioner  that the continuation  of a line  of insurance  or class  of business  to which  the policy  belongs  will  jeopardize our solvency  or will  place us in

violation  of the insurance  laws of Oregon  or any other  state; or

**(7)** Loss  or decrease  in reinsurance covering  the risk.

**c.** 60 days  or more  or is a renewal  policy,  we may  cancel  for any other  reason  approved  by the commissioner by rule,  but only  with  respect  to insurance  provided  under  the following:

**(1)** A package  policy  that includes commercial  property  and commercial  liability  insurance;

**(2)** Commercial  Automobile  Coverage Part;

**(3)** Commercial  General  Liability Coverage  Part;

**(4)** Commercial  Property  Coverage Part - Legal  Liability  Coverage Form;

**(5)** Commercial  Property  Coverage Part - Mortgageholders  Errors And Omissions  Coverage Form;

**(6)** Employment-related  Practices Liability  Coverage Part;

**(7)** Farm  Coverage  Part - Farm Liability  Coverage Form;

**(8)** Liquor  Liability  Coverage Part;

**(9)** Products/Completed  Operations Liability  Coverage Part; or

**(10)** Medical  Professional  Liability Coverage  Part.

IL 02 79 09 08                              ©ISO Properties,  Inc., 2007                              Page 1 of 2



**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is amended by the addition of the following:

**3.** We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Number Of Days' Notice Of Cancellation:**

**a.** With respect to insurance provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least 10 working days after the first Named Insured receives our notice.

**b.** With respect to insurance other than that provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least:

**(1)** 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or

**(2)** 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

**D.** Paragraph **6.** of the **Cancellation** Common Policy Condition does not apply.

**E.** The following are added and supersede any provision to the contrary:

**1. Nonrenewal**

We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

**a.** Expiration date of the policy; or

**b.** Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

**2. Mailing Of Notices**

**a.** If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.

**b.** The following provision applies with respect to coverage provided under the Farm Coverage Part:

If the first Named Insured has affirmatively consented to our use of an electronic record to deliver notice of cancellation or nonrenewal and has not withdrawn such consent, then the electronic record delivering notice of cancellation or nonrenewal satisfies the requirement that the notice of cancellation or nonrenewal be provided, or made available, to the first Named Insured in writing if we send the first Named Insured the electronic record with a request for a return receipt and we receive the return receipt. If we do not receive the return receipt, we may cancel or nonrenew the policy only after providing or delivering the notice of cancellation or nonrenewal to the first Named Insured in writing, subject to Paragraph **2.a.** above.

 ©ISO Properties, Inc., 2007 IL 02 79 09 08

# EXHIBIT B



**HONOR CAPITAL**
ETI FINANCIAL BOSTON PREMIUM FINANCE
FINCO STATEWIDE IDEAL
PREMIUM FINANCE SINCE 1948

P.O. Box 829522, Pembroke Pines, FL 33082
Tel: (800) 995-7001

PRIMORDIAL MOUNTAIN LLC*          02202
1508 ANTELOPE ROAD
WHITE CITY,OR 97503

*E.T.I. FINANCIAL CORP.*
P.O. Box 829522, Pembroke Pines, FL 33082-9522
Tel: 954-510-8008 / Watts 1-800-995-7001

| POLICY NUMBER | BLS63099057 | AGENT | 09701 |
|---|---|---|---|
| CANCELLATION DATE | 07/07/2021 | CONTRACT NUMBER | 7516955-7 |
| INSURANCE COMPANY | 10590 | BALANCE | Redacted |

You are hereby notified that the policy described above is cancelled for non-payment of an installment in accordance with the conditions and terms of the premium finance agreement which incorporates a power of attorney. This cancellation is effective one day after the above captioned date, at the hour indicated in the policy as the effective time.

Any payment received by us after this notice has been sent does not constitute either an undertaking by us to reinstate the policy or a waiver of the insured's default of the premium finance agreement with us.

The Florida Insurance Code, Part XV of Chapter 627 and, if not Florida, the laws of the state in which your policy and premium finance agreement were written, recognize this as a valid notice of cancellation. Florida law provides that the insurer shall promptly return the unpaid balance due under the finance contract, up to the gross amount available upon cancellation of the policy, to the premium finance company and any remaining unearned premium to the agent or the insured, or both, for the benefit of the insured or insureds. The laws of any other state in which your policy and premium finance agreement may have been written provide that the insurer shall return the unearned premium to the premium finance company.

If the policy or any statute requires the insurer to give notice to a mortgagee, governmental agency, or other third party before the policy can be cancelled, the insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day, or such other time period prescribed by applicable state law, after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.

**STANDARD CANCELLATION NOTICE**

**NOTICE OF CANCELLATION**

09701
COVERWALLET INC
25 WEST 45TH STREET FLOOR 15
NEW YORK,NY 10036

**PRODUCER**

**IF THE ABOVE CAPTIONED INSURANCE CONTRACT OR CONTRACTS PROVIDE MOTOR VEHICLE LIABILITY INSURANCE REQUIRED BY THE FINANCIAL RESPONSIBILITY LAW OF FLORIDA, PROOF OF FINANCIAL RESPONSIBILITY IS REQUIRED TO BE MAINTAINED CONTINUOUSLY FOR A PERIOD OF THREE (3) YEARS, PURSUANT TO CHAPTER 324, FLORIDA STATUTES, AND THE OPERATION OF A VEHICLE WITHOUT SUCH FINANCIAL RESPONSIBILITY IS UNLAWFUL.**

E.T.I. FINANCIAL CORP.

LIBERTY MUTUAL INSURANCE CO
C/O: OHIO SECURITY INSURANCE CO
175 BERKLEY STREET
BOSTON,MA 02117

INSURED

PRIMORDIAL MOUNTAIN LLC*
1508 ANTELOPE ROAD
WHITE CITY,OR 97503

OSIC_000295

**INSURANCE COMPANY**          CARRIER COPY

130K

Page 2 of 2

# EXHIBIT C

Verified Correct Copy of Original 4/19/2024.

FILED MULTNOMAH CO CIRCUIT CT
'24 APR 19 AM10:22

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

JESSICA SMITH,
    Individually, and as Personal
    Representative of the ESTATE OF
    FURIOUS TALON ELDRIDGE,
    Deceased,

KLOEY KELTON,
    As Guardian Ad Litem for
    REVEILLE KELTON-ELDRIDGE,
    A Minor,

        *Plaintiffs,*

                v.

JOSEPH P. DONAHUE III
    An individual,

PRIMORDIAL MOUNTAIN LLC d/b/a
CBDAILY REMEDIES
    An Oregon Limited Liability Company,

RANDALL LEACH
    An Individual,

MARY LAURENT LEACH
    An Individual,

CPM REAL ESTATE SERVICES, INC. d/b/a
CPM REAL ESTATE SERVICES
    An Oregon Corporation,

CPM REAL ESTATE GROUP, LLC
    An Oregon Limited Liability Company,

EUGENE WELDERS SUPPLY CO. d/b/a
INDUSTRIAL SOURCE
    An Oregon Corporation,

HARDWARE FACTORY STORE, INC. d/b/a
HFS
    A California Corporation,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 24CV18892

**COMPLAINT**

Wrongful Death; Premises Liability;
Negligence Per Se Violations of
Oregon Safe Employment Act;
Violations of Employer Liability Act;
Strict Products Liability; Negligence

**JURY TRIAL DEMANDED**

**NOT SUBJECT TO
MANDATORY ARBITRATION**

**Prayer: $24,378,552.03**

**Filing Fee: $1,178.00
Per ORS 21.160(1)(e)**

Page 1 – COMPLAINT

**NICHOLS LAW GROUP LLC**

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC_000392

HFS SOCAL, INC. d/b/a
HFS
    A California Corporation,

BLACK CORPORATION
    An Oregon Corporation,

WHITE COMPANY,
    An Oregon Partnership,

FIRST DOE through TENTH DOE,
    Individuals,

Plaintiff Jessica Smith, individually and as duly appointed Personal Representative of the Estate of Furious Talon Eldridge ("Mr. Eldridge"), now deceased, and Plaintiff Reveille Kelton-Eldridge, by and through her guardian ad litem Kloey Kelton, commence this Wrongful Death action pursuant to ORS 30.020.

Plaintiffs allege as follows:

**PARTIES**

1.

Plaintiff Jessica Smith ("Plaintiff Smith") is the mother of Furious Talon Eldridge, now deceased, and is a citizen of the State of Oregon, and resides in the City of Gresham, Multnomah County, Oregon. Plaintiff Smith was appointed Personal Representative of the Estate of Furious Talon Eldridge by the Multnomah County Circuit Court on December 26, 2023.

2.

Plaintiff Reveille Kelton-Eldridge (Plaintiff Kelton-Eldridge) is the child of Furious Talon Eldridge and is a citizen of the State of New Mexico. Kloey Kelton is the duly appointed guard ad litem for Plaintiff Kelton-Eldridge, a minor.

3.

At the time of his death, Furious Talon Eldridge was a 24-year-old man that died as a result of the negligence, gross negligence, and recklessness of Defendants, and each of them, described herein.

Page 2 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC-000393

4.

Defendant Joesph P. Donahue III ("Jospeh Donahue" or "Donahue") is an individual who currently resides in Warrenton, Virginia. At the time of the events and occurrences giving rise to this complaint, Donahue was a resident of the City of Ashland, Oregon.

5.

At all material times, Defendant Primordial Mountain LLC d/b/a CBDaily Remedies ("Primordial Mountain") was a limited liability company, duly formed and existing under the laws of the State of Oregon, engaging in the business of processing and selling cannabis and cannabis products.

6.

Defendant Randall Leach ("Randall Leach") is an individual who resides in the City of Madras, Jefferson County, Oregon. Upon information and belief, Randall Leach maintains a primary residence in the City of Free Union, Virginia.

7.

Defendant Mary Laurent Leach ("Mary Leach") is an individual is an individual who resides in the City of Madras, Jefferson County, Oregon. Upon information and belief, Randall Leach maintains a primary residence in the City of Free Union, Virginia

8.

Defendants CPM Real Estate Services Inc. d/b/a CPM Real Estate Services and CPM Real Estate Group, LLC (collectively "CPM") are a corporation and limited liability company, respectively, duly formed and existing under the laws of the State of Oregon.

9.

Defendant Eugene Welders Supply Co. d/b/a Industrial Source ("Industrial Source") is a corporation duly formed and existing under the laws of the State of Oregon.

10.

Defendant Hardware Factory Store, Inc. d/b/a HFS and/or "www.shophfs.com" is a

Page 3 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

corporation duly formed and existing under the laws of the State of California.

11.

Defendant HFS SOCAL, Inc. d/b/a HFS and/or "www.shophfs.com" is a corporation duly formed and existing under the laws of the State of California.

12.

The true names and capacities, whether individual, corporate, or otherwise, of Defendants BLACK CORPORATION, WHITE COMPANY, a partnership, and FIRST DOE through TENTH DOE, inclusive, are unknown to Plaintiffs, who, therefore, sues said Defendants by said fictitious names. Plaintiffs are informed, and believe, and therefore allege, that each of said Defendants was negligent and/or strictly liable, and/or otherwise responsible in some manner for the events and occurrences herein referred to including, but not limited to, the design, manufacture, distribution, sale, installation, maintenance, inspection, and testing of the hydrocarbon extraction premises and products hereinafter described.

**Alter Ego/Joint Venture Allegations**

*(CPM Real Estate Services Inc. d/b/a CPM Real Estate Services and*

*CPM Real Estate Group, LLC)*

13.

Upon information and belief, there existed such a unity of interest and ownership between Defendants CPM Real Estate Services Inc.; and, CPM Real Estate Group LLC (hereinafter collectively referred to as "CPM Defendants"), that the separate personalities of the businesses and their beneficial owners did not exist in reality; thus, adherence to the fiction of separate company existences would sanction a fraud, promote injustice, and/or produce an inequitable result if the actions in question were treated as those of one of the defendants alone.

14.

As to all allegations against Defendants CPM Real Estate Services Inc.; and, CPM Real Estate Group LLC, Plaintiffs allege that that each such defendant acted or failed to act on behalf

Page 4 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Page 5 of 34

of his, or its, alter ego(s).

15.

Upon information and belief, Defendants CPM Real Estate Services Inc.; and, CPM Real Estate Group LLC, and each of them, were, at all relevant times, the principals, members, beneficial owners, agents, masters, servants, employers, employees, contractors, co-conspirators, alter egos, successors, and/or joint venturers of each other, and were acting within the scope and authority of that agency, employment, contract, relationship, and/or venture, with the permission and consent of each other, and/or they acted or failed to act with the knowledge, acquiescence, ratification, authorization, or consent of the principals, who accepted the benefits of those actions or omission.

*(Hardware Factory Store, Inc. and HFS SOCAL, Inc.)*

16.

Upon information and belief, there existed such a unity of interest and ownership between Defendants Hardware Factory Store, Inc. d/b/a HFS; and, HFS SOCAL, Inc. d/b/a HFS (hereinafter collectively referred to as "Defendant HFS"), that the separate personalities of the businesses and their beneficial owners did not exist in reality; thus, adherence to the fiction of separate company existences would sanction a fraud, promote injustice, and/or produce an inequitable result if the actions in question were treated as those of one of the defendants alone.

17.

As to all allegations against Defendants Hardware Factory Store, Inc. d/b/a HFS; and, HFS SOCAL, Inc. d/b/a HFS, Plaintiffs allege that that each such defendant acted or failed to act on behalf of his, or its, alter ego(s).

18.

Upon information and belief, Defendants Hardware Factory Store, Inc. d/b/a HFS; and, HFS SOCAL, Inc. d/b/a HFS, and each of them, were, at all relevant times, the principals, members, beneficial owners, agents, masters, servants, employers, employees, contractors, co-

Verified Correct Copy of Original 4/19/2024.

Page 5 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSJC-000396

conspirators, alter egos, successors, and/or joint venturers of each other, and were acting within the scope and authority of that agency, employment, contract, relationship, and/or venture, with the permission and consent of each other, and/or they acted or failed to act with the knowledge, acquiescence, ratification, authorization, or consent of the principals, who accepted the benefits of those actions or omission.

## JURISDICTION AND VENUE

19.

Jurisdiction is proper in the State of Oregon pursuant to ORS 14.030 because the wrongful conduct giving rise to the causes of action in this lawsuit occurred in this state. Venue is proper in the Circuit Court for Multnomah County pursuant to ORS 14.080(1) because at least one of the parties resided in Multnomah County and the injuries occurred in Multnomah County. Alternatively, venue is proper in Multnomah County pursuant to ORS 14.080(2) because one or more defendants conduct regular, sustained business activity and has an office for the transaction of business in Multnomah County. Further, Plaintiffs' decedent, Furious Talon Eldridge, died from the injuries suffered in the subject explosion in Multnomah County.

## FACTUAL BACKGROUND

20.

Plaintiffs realleges and incorporates by reference the facts and allegations set forth in paragraphs 1 through 19 above as if fully set forth herein.

21.

Upon information and belief, Defendant Donahue filed Articles of Organization with the Oregon Secretary of State in 2017 to create and/or take ownership of Primordial Mountain. Defendant Donahue was the sole member and owner of Primordial Mountain.

22.

At all material times, Primordial Mountain was engaged in the business of manufacturing, processing, and selling cannabis and/or cannabis extracts to the general public.

Page 6 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

23.

On February 19, 2020, Defendant Donahue filed an Application for Registration with the Oregon Secretary of State to create CBDaily Remedies, an assumed business name of Primordial Mountain LLC, with the stated business activity of, "Artisanal body care and gourmet products that are preventive, integrative, holistic, and organic."

24.

On June 5 2020, Defendant Primordial Mountain, under the direction of its sole member, Defendant Donahue, entered into a lease agreement (the "Lease") with Defendants Thomas Leach and Mary Laurent Leach (hereinafter referred to collectively as the "Leach Defendants), to become the commercial tenant of an industrial warehouse facility located at 1508 Antelope Road, White City, Oregon ("the Subject Property").

25.

Upon information and belief, the Subject Property was wholly and exclusively owned by the Leach Defendants.

26.

Upon information and belief, the Subject Property was operated, maintained, managed, and/or offered for lease by CPM Defendants, who acted as the "agent" of the Leach Defendants and brokered the lease agreement between Defendant Donahue and the Leach Defendants. Thereafter, CPM Defendants assumed the responsibility of "landlord" and/or property manager over the Subject Property.

27.

Pursuant to the Lease, the stated purpose of Primordial Mountain's tenancy was to "occupy the Leased Premises[1] for CBD products and related services."

28.

At all material times, Defendants CPM, individually and as agent for the Leach Defendants,

---

[1] The "Leased Premises" referenced in the Lease is the Subject Property located at 1508 Antelope Road, White City, Oregon.

Page 7 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

maintained free access to the Subject Property for the purpose of examining or inspecting the same. The Leach Defendants received from Primoradial Mountain $3,800.00 per month as "rent."

29.

Upon information and belief, a variety of widely available solvents, including butane gas, can be used as cost-effective way to extract cannabinoids such as CBD and THC from cannabis through a process known as hydrocarbon extraction.

30.

Butane gas is a hazardous and extremely flammable substance.[2]

31.

At all material times, Defendants Donahue and Primordial Mountain used or intended to use the Subject Property for the purpose of extracting CBD and/or THC from cannabis through hydrocarbon extraction using butane gas (hereinafter referred to as "Butane Hash Oil Extraction[3]").

32.

Upon information and belief, Defendants CPM and the Leach Defendants were aware of the nature of the use of the Subject Property. Specifically, Defendants CPM and the Leach Defendants, at all material times, knew or should have known through the exercise of reasonable care, inspection, and/or maintenance of the Subject Property, that Defendants Donahue and Primordial Mountain used the Subject Property for producing cannabis extracts in a Butane Hash Oil Extraction system.

33.

Upon information and belief, in or about 2020, Defendant Donahue hired Furious Talon Eldridge as a consultant and/or independent contractor to work at Primordial Mountain to, among other things, construct and/or assemble the components and equipment necessary to operate a

_____

[2] According to OSHA 29 CFR 1920.1200 HCS, butane is considered a Category 1, hazardous and extremely flammable gas.

[3] Butane Hash Oil, Butane Honey Oil, and BHO are synonyms and used interchangeably herein.

Page 8 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018/399
Facsimile: (503) 222-0693

Butane Hash Oil Extraction system on the Subject Property.

34.

Upon information and belief, at the time of his hiring and at all material times thereafter, Mr. Eldridge had no expertise in fire safety systems, explosion venting systems, or NFPA 54 or 68.

35.

Upon information and belief, between December, 2020 and April, 2021, Mr. Eldridge, under the direction of Defendant Donahue, purchased tens of thousands of dollars' worth of equipment, supplies, and butane gas in furtherance of constructing and assembling a Butane Hash Oil Extraction system.

36.

Defendant Industrial Source advertises itself to the general public as, "Experts in Cannabis Extraction & $CO_2$ Enrichment – Hydrocarbons/Solvents/Alcohols, Dry Ice and $CO_2$," and, "We are committed to expeditiously delivering high-purity hydrocarbon gases and solvents precisely engineered for extraction, saving our customers time and money."[4]

37.

Upon information and belief, between December of 2020 and February of 2021, Mr. Eldridge consulted with Jeramiah Brandon Pierce (hereinafter "Pierce"), an agent and/or employee of Defendant Industrial Source, regarding a BHO Extraction system.

38.

Upon information and belief, Pierce, working in his capacity as agent and/or employee of Defendant Industrial Source, had actual knowledge that Defendants Donahue and Primordial Mountain did not have a license to operate a BHO extraction system.

39.

Upon information and belief, Mr. Pierce, working in his capacity as agent and/or employee

---

[4] https://www.industrialsource.com/cannabis#cannabis-middle

Page 9 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC-000400

Verified Correct Copy of Original 4/19/2024.

Verified Correct Copy of Original 4/19/2024.

of Defendant Industrial Source, sold butane to Mr. Eldridge and Defendants Donahue and Primordial Mountain with the knowledge that the butane would be used in an unlicensed, BHO extraction system.

40.

Defendant Industrial Source advised Mr. Eldridge that certain components he intended to purchase for the unlicensed BHO extraction system were not C1D1-certified[5] and, therefore, would not be approved if Defendants Donahue and Primordial Mountain applied for a license.

41.

Between December, 2020 and April, 2021, Defendant Industrial Source, with actual knowledge that Mr. Eldridge, Defendant Donahue, and Defendant Primordial Mountain did not have C1D1 certification or a license to operate a BHO extraction system, sold Mr. Eldridge $65,916.62 worth of equipment, supplies, materials, and/or butane, which Industrial Source knew or should have known through the exercise of reasonable care would be used in the construction and assembly of a BHO extraction system.

42.

Defendant Donahue directed Mr. Eldridge to construct and/or assemble a BHO extraction system using, in part, the equipment, components, and butane purchased from Industrial Source.

43.

While the BHO extraction system was being assembled and upon its completion, the

---

[5] C1D1 classification is a term used to describe an industrial space which handles flammable or combustible liquid materials. Such spaces must meet strict safety requirements in order to reduce the risk of fires, explosions, or other hazardous incidents. C1D1 stands for Class 1 Division 1, which refers to the Division of the National Fire Protection Association (NFPA) 70 Standard that outlines the safety requirements that apply to industrial spaces containing flammable and combustible vapors, liquids, gases, or combustible dusts or fibers. This standard applies to any space where there is a potential for hazardous conditions, including fire, explosions, or toxic gases. The standard also includes specific requirements for lighting, ventilation, fire suppression systems, and other safety measures that must be in place in order to protect workers and property from harm.

OSHA also defines the requirements for "electric equipment and wiring in locations that are classified depending on the properties of the flammable vapors, liquids or gases, or combustible dusts or fibers that may be present therein and the likelihood that a flammable or combustible concentration or quantity is present."

Page 10 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC-000401

Subject Property was defective and presented an unreasonable risk of harm to every member of the public, including Mr. Eldridge. Specifically, the Subject Property:

a) Violated the 2014 Oregon Fire Code (OR Admin. Rule 837-040-0001 et seq., the 2012 International Fire Code, and the Life Safety Code (NFPA 101);

b) Was not equipped with automatic sprinklers;

c) Was not equipped with deflagration venting, as required by NFPA 68 and substantive Oregon law;

d) Was not equipped with any explosion suppression systems, contrary to NFPA 68;

e) Did not have adequate ventilation, in violation of Oregon law;

f) Was not equipped with LPG ("liquid petroleum gas")[6] detectors;

g) Did not have any interior "Exit" signs;

h) Did not have adequate exit routes;

i) Did not have suitable fire control devices;

j) Was not equipped with a "safety shower";

k) Was not equipped with anti-static mats to protect from static electricity discharge;

l) Did not have emergency lighting;

m) Did not have lit exit routes; and

n) Did not have two or more working exits, as required by Oregon law

44.

On April 21, 2021, Mr. Eldridge, Defendant Donahue, and several other employees of Defendant Primordial Mountain were working at the Subject Property when one of the components of the BHO extraction system failed and/or malfunctioned, causing byproducts of the extraction process, which contained butane, to leak. Everyone initially evacuated the building. Several minutes later, Defendant Donahue directed Mr. Eldridge to follow him back into the building to stop the leaking butane tank. Suddenly and without warning, an ignition source caused the butane

---

[6] Butane is a colorless, odorless, gas that is a type of Liquified Petroleum Gas ("LPG").

Page 11 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Verified Correct Copy of Original 4/19/2024.

to ignite and violently explode, destroying the Subject Property while Mr. Eldridge and Defendant Donahue were still inside.

45.

Mr. Eldridge survived the explosion but suffered severe and catastrophic injuries, including 85-90% TBSA third degree burns to his scalp, face, corneas, neck, torso, upper extremities, abdomen, and lower extremities. Mr. Eldridge was life-flighted to OHSU where he died the following day.

46.

At all material times, the Defendants, and each of them, knew or should have known that Defendants Donahue and Primordial Mountain were operating a BHO extraction system at the Subject Property.

47.

At all material times, the Defendants, and each of them, knew or should have known that Liquified Petroleum Gases such as butane have a wide explosive range, is a highly volatile gas, and its vapors are odorless and highly explosive under a variety of circumstances, including those which are routinely encountered during the preparation of cannabis extracts in interior spaces

48.

At all material times, the Defendants, and each of them, in the exercise of ordinary diligence, should have known of prior fires, explosions, injuries, and deaths caused by the ignition of escaped Liquified Petroleum Gas used in BHO extraction systems.

49.

On or about April 21, 2021, Defendants knew of the unreasonably dangerous conditions they were creating and the unreasonable risk of harm to which they were subjecting Mr. Eldridge by operating or allowing to operate the BHO extraction system utilizing highly volatile liquid petroleum gas as an extraction solvent.

Page 12 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC-000403

Verified Correct Copy of Original 4/19/2024.

50.

At all material times, including April 21, 2021, the Defendants, and each of them, failed to provide a safe working environment for Mr. Eldridge, *i.e.*, a working environment free from recognized hazards (specifically, a ventilated work environment free from explosion hazards); failed to provide fire retardant clothing or any other form of personal protective equipment to Mr. Eldridge; failed to warn Mr. Eldridge about the dangers and hazards of butane gas or the extraction process; and/or, failed to provide any training to Mr. Eldridge regarding the dangers and hazards of butane gas or BHO extraction.

51.

At the time of the explosion, Mr. Eldridge was working at the Subject Property under the direction of Defendant Donahue and for the economic benefit of the operation(s) of Defendants Donahue, Primordial Mountain, CPM, and Leach.

**FIRST CLAIM FOR RELIEF**

**Premises Liability**

*(Against Defendants Donahue, Primordial Mountain, CPM, Leach)*

52.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 51 above as if fully set forth herein.

53.

On April 21, 2021, Mr. Eldridge was an independent contractor for, or employee of, Defendant Primordial Mountain and working under the direction of Defendant Donahue. At the time of the explosion, Mr. Eldridge was present at the Subject Property for the purpose of working and for the economic benefit of the operations of Defendants Donahue and Primordial Mountain.

54.

On April 21, 2021, and at all other times relevant to this lawsuit, Defendants Donahue, Primordial Mountain, CPM, and Leach were possessors of the Subject Property and had the ability

Page 13 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

to control, and did control, the operations of Primordial Mountain, the operations on the Subject Property, and the conditions existing on the Subject Property.

55.

On April 21, 2021, the Leach Defendants owned the Subject Property, and Defendants Leach and CPM maintained and controlled the Subject Property.

56.

Specifically, under Paragraph 15 of the Lease, "The Landlord, or the Landlord's representatives and agents, shall have free access to the Leased Premises at reasonable times for the purpose of examining or exhibiting the same or to make any repairs or alterations on the Leased Premises."

57.

On April 21, 2021, Defendant Primordial Mountain, by virtue of being located in and operating a business on the Subject Property, and by virtue of being a "Tenant" under the Lease Agreement with Defendants Leach and CPM, also possessed, maintained and controlled the Subject Property.

58.

Defendants Donahue and Primordial Mountain made changes to the Subject Property that resulted in Code Violations. Specifically, the Defendants Donahue and Primordial Mountain installed at least three, commercial BHO hydrocarbon extraction systems and butane tanks without installing reasonable and necessary safety systems.

59.

As owners, occupiers, tenants and possessors of the Subject Property, Defendants Donahue, Primordial Mountain, CPM, and Leach, either knew about the following dangers on their property or, in the exercise of reasonable care, should have known of the following dangers on their property:

a)      Violated the 2014 Oregon Fire Code (OR Admin. Rule 837-040-0001 et seq.,) in

Page 14 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

that it was not equipped with an automatic sprinkler system;

b)      Was not equipped with fire alarms;

c)      Was not equipped with smoke alarms;

d)      Was not equipped with deflagration venting, as required by NFPA 68, Chapter 7;

e)      Was not equipped with any explosion suppression systems, contrary to NFPA 68;

f)      Did not have adequate ventilation for the intended and known use of the premises;

g)      Was not equipped with LP gas detectors, despite the fact that it was known to these Defendants that LP gas mixtures could, or would, be used at the premises;

h)      Did not have any interior "Exit" signs;

i)      Did not have adequate exit routes for the intended and known use of the property;

j)      Did not have suitable fire control devices, given the intended and known use of the Subject Property;

k)      Was not equipped with anti-static mats to protect from static electricity discharge;

l)      Was not equipped with a "safety shower;" and

m)      Did not have emergency lighting;

60.

As owners, occupiers, tenants and possessors of the Subject Property, Defendants Donahue, Primordial Mountain, CPM, and Leach knew, or by the exercise of reasonable care should have discovered, the unreasonably dangerous condition created by the deficiencies and code violations outlined in the preceding paragraph, and should have protected Mr. Eldridge from those dangers. Further, the abovementioned Defendants should have warned Mr. Eldridge of the defects outlined in the preceding paragraph. The Defendants did not take any steps to discover or eliminate these hazards, did not warn Mr. Eldridge of the risk presented by these hazards.

61.

Further, as owners, occupiers, tenants and possessors of the Subject Property, Defendants Donahue, Primordial Mountain, CPM and Leach knew, or by the exercise of reasonable care could

Page 15 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC-0004406

have discovered, the unreasonably dangerous condition created by utilizing a hydrocarbon extraction system for cannabis utilizing butane gas, and should have realized that such a process involves an unreasonable risk of harm to Mr. Eldridge, as an invitee. They also had a duty to warn Mr. Eldridge of the latent danger their premises presented. They failed to do so.

62.

Mr. Eldridge was not aware, or did not fully appreciate, the unreasonably dangerous condition of the Subject Property, and did not know of the unreasonable risk of harm to which he was exposed on April 21, 2021.

63.

Alternatively, Mr. Eldridge understood and appreciated the substantial risk of harm presented by the condition of the Subject Property and, on numerous occasions, communicated his concerns regarding the condition of the Subject Property, lack of personal protective equipment, lack of safety equipment, and lack of safety protocols and procedures to Defendant Donahue.

64.

Defendants Donahue, Primordial Mountain, CPM and Leach breached their duty to Mr. Eldridge, as an invitee, to keep the Subject Property, in a reasonably safe condition and to protect Mr. Eldridge against unreasonably dangerous conditions. The breach of duty by Defendants Donahue, Primordial Mountain, CPM and Leach caused, or was a substantial factor in causing, Mr. Eldridge's severe injuries and death.

65.

On April 21, 2021, and as a proximate result of the negligence and breaches of duty of the Defendants Donahue, Primordial Mountain, CPM and Leach as set forth in this First Claim for Relief, a butane tank exploded while Mr. Eldridge was inside the Subject Property, engulfing him with flames that caused third degree burns to 85-90% of his body, as well as the injuries resulting in death set forth below. The negligent acts and omissions alleged above caused or were a substantial factor in causing Mr. Eldridge's severe injuries resulting in death and his damages, as

Page 16 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 324-0018
Facsimile: (503) 222-0693

set forth in detail below.

## SECOND CLAIM FOR RELIEF

### Employer Liability Claim – ORS 654.015, 654.305

*(Against Defendants Donahue and Primordial Mountain)*

66.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 65 above as if fully set forth herein.

67.

Oregon's Safe Employment Act at ORS 654.015 states:

No employer or owner shall construct or cause to be contrasted or maintained any place of employment that is unsafe or detrimental to health.

68.

Oregon's Safe Employment Act at ORS 654.305 states:

Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.

69.

At all material times, Defendant Donahue was an owner, contractor, and person having charge of, or responsibility for, work involving a risk or danger to the employees on the Subject Property. Defendant Donahue was required to use every device, care, and precaution that was practicable to use for the protection and safety of life and limb of all employees on the construction site, without regard to the additional cost of suitable material or safety appliance and devices.

Page 17 – COMPLAINT

**NICHOLS LAW GROUP LLC**

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

70.

Defendant Donahue engaged in a commercial-scale cannabis extraction operation that involved a substantial risk of danger by exposing employees, including Mr. Eldridge, to closed-system Butane Hash Oil extraction system, as well as requiring employees to work in a facility that housed hundreds of gallons of butane.

71.

Mr. Eldridge's injuries, which ultimately led to his death, occurred at a "place of employment" owned, maintained, possessed and controlled by Defendants Donahue and Primordial Mountain after the they took possession of the Subject Property.

72.

As such, under the Oregon Safe Employment Act (OSEA), the Defendants Donahue and Primordial Mountain were prohibited from constructing or causing to be constructed or maintained any place of employment which is unsafe. Defendants Donahue and Primordial Mountain breached this prohibition in one or more of the following ways:

h)  Failing to provide Mr. Eldridge a safe place to work, in violation of ORS 654.010;

i)  Failing to comply with all safety and health orders, decisions, and rules, in violation of ORS 654.022;

j)  Failing to comply with OAR 437-003-001 (3)(a) as it incorporates by reference 29 C.F.R. 1926.20(a)(1) by requiring Mr. Eldridge to work in surroundings or under working conditions that are hazardous or dangerous to his health and safety;

k)  Failing to have two or more exit routes depending on the size and layout of the work area. OAR 437-002-0041 (3)(b);

l)  Failing to have unobstructed access to exit OAR 437-002-0041(5);

m)  Failing to have emergency action plan 437-002-0042(1) and (2);

n)  Failing to have appropriate ventilation, in violation OAR 437-002-1910.106(e)(3)(v);

Page 18 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

o)    Failing to have appropriate fire control equipment or plans or prevent the ignition of flammable vapors, in violation of OAR 437-002-1910.106 (e)(5)-(6);

73.

Defendant Donahue, by allowing an unlicensed, "closed loop" BHO extraction system for cannabis extraction to occur on the Subject Property, violated the OSEA.

74.

Defendant Donahue, individually and as sole member of Defendant Primordial Mountain, would routinely inspect the Subject Property, including the area where Mr. Eldridge was injured, exercised the right to control the Subject Property, and had knowledge of the unreasonable risk of harm the Subject Property created for the Mr. Eldridge.

75.

Defendants Donahue's and Primordial Mountain's breaches of the OSEA as set forth herein, caused or substantially contributed to Mr. Eldridge's severe injuries and death.

**THIRD CLAIM FOR RELIEF**

**Negligence *Per Se* – Oregon Safe Employment Act**

***(Against Defendants Donahue, Primordial Mountain, CPM, and Leach)***

76.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77.

On April 21, 2021, Mr. Eldridge was employed as an independent contractor, working for Defendant Primordial Mountain under the direction of Defendant Donahue and for the economic benefit of Defendants Donahue and Primordial Mountain.

78.

As set forth above in this Complaint, Defendants CPM and the Leach Defendants continued to maintain control over Subject Property after Defendants Donahue and Primordial Mountain took

Page 19 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC-000410

possession and knew or reasonably should have known in the exercise of due care, of the dangerous BHO extraction operations taking place at the Subject Property.

79.

As set forth above, Defendants Donahue and Primordial Mountain were tenants under the Lease at the Subject Property. Further, Defendants Donahue and Primordial Mountain owned, operated, and profited from a business on the Subject Property, had employees on the Subject Property, installed industrial cannabis extraction equipment within the Subject Property, and had possession and control over the Subject Property.

80.

Defendant Donahue funded, financed, and controlled the operations of the Defendant Primordial Mountain. Further, Defendants Leach and CPM provided the Subject Property to Defendant Donahue with knowledge that the Subject Property would be used, and was used, in the manufacture and extraction of cannabis extracts, including BHO.

81.

Defendants Donahue, Leach, and CPM economically benefitted from the tenancy of Defendant Primordial Mountain on the Subject Property.

82.

Oregon's Safe Employment Act at ORS 654.010 requires every employer "to furnish a place of employment which is safe and healthful for employees therein," and to "furnish and use such devices and safeguards," and to "adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful," and to "do every other thing reasonably necessary to protect the life, safety and health of such employees."

83.

Oregon's Safe Employment Act at ORS 654.015 prohibits premises owners from "maintain[ing] any place of employment that is unsafe or detrimental to health."

Page 20 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Page 21 of 34

84.

Mr Eldridge was in a class of persons meant to be protected by the OSEA.

85.

Mr. Eldridge suffered the type of injury the OSEA is meant to protect against.

86.

Pursuant to ORS 654.015, Defendants Donahue, Primordial Mountain, CPM, and Leach owed Mr. Eldridge a duty to abide by fire and safety codes, as well as occupational safety codes, standards, and laws applicable to the Subject Property and applicable to the work being performed on the Subject Property.

87.

At all material times, there were in full force and effect in the State of Oregon certain safety codes, promulgated as minimum standards for the safety and protection of others, including Mr. Eldridge. Defendants Donahue, Primordial Mountain, CPM, and Leach, and each of them, violated such standards and codes as follows:

a) Failing to have two or more exit routes depending on the size and layout of the work area. OAR 437-002-0041 (3)(b);

b) Failing to have unobstructed access to exit OAR 437-002-0041(5);

c) Failing to have emergency action plan 437-002-0042(1) and (2);

d) Failing to have appropriate ventilation, in violation OAR 437-002-1910.106(c)(3)(v);

e) Failing to have fire control equipment or plans, in violation of OAR 437-002-1910.106 (c)(5)-(6);

f) Failing to provide Personal Protective Equipment ("PPE") or provide PPE training, in violation of OAR 437-002-0134 (1) (Personal Protective Equipment); and

g) Failing to provide or require appropriate work clothing. OAR 437-002-0134 (6).

Page 21 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

88.

Defendants, and each of them, breached their duty to Mr. Eldridge by allowing, employing, and/or profiting from a "closed loop system" process for manufacturing Hash Oil, using butane, a LP gas, in an interior space.

89.

Defendants, and each of them, had knowledge of the unreasonable risk of harm they were creating for Mr. Eldridge.

90.

Mr. Eldridge had no knowledge that the Defendants were subjecting him to an unreasonable risk of harm when, on April 21, 2021, the facility exploded. Alternatively, Mr. Eldridge understood and appreciated the risk and warned Defendant Donahue on numerous occasions of the potential risk of serious injury or death presented by the BHO extraction system; however, Defendant Donahue disregarded Mr. Eldridge's safety concerns.

91.

The aforementioned Defendants' breaches of the Oregon Safe Employment Act caused or were a substantial factor in causing Mr. Eldridge's severe injuries, as detailed below, and constitute negligence *per se*.

## FOURTH CLAIM FOR RELIEF

### Negligence

*(Against Defendant CPM and Leach)*

92.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 91 above as if fully set forth herein.

93.

The Lease creates a unique landlord/tenant relationship in which Defendants CPM and Leach (hereinafter collectively "Landlord Defendants"), as landlord, continued to exercise control

Page 22 – COMPLAINT

NICHOLS LAW GROUP LLC
4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

over the Subject Property through unfettered access to the Subject Property to monitor Defendants Donahue's and Primordial Mountain's business practices. Under the Lease, the Landlord Defendants can enter the Subject Property and audit and inspect to ensure the Defendant Donahue's and Defendant Primordial Mountain's compliance with safety standards and the law.

94.

Under Paragraph 6 of the Lease, "Tenant shall use and occupy the Leased Premises for CBD products and related services."

95.

Under Paragraph 7 of the Lease, "The Tenant shall not use the Leased Premises in any manner that will increase the rating or cost of fire insurance upon the Improvement from the rate in force as at the date of the commencement of the term of this Lease, or in any other manner which would deface or injure the Improvement or the Real Property, or portions of either."

96.

Under Paragraph 8 of the Lease, "The Tenant at the Tenant's own expense shall promptly observe and comply with all present and future laws, orders, regulations, rules, ordinances, use and zoning restrictions, recorded covenants and conditions, and other requirements of federal, state, county and city governments with respect to the use, care and control of the Leased Premises. Tenant acknowledges that the Subject Property is within the City of Jackson County and agrees to comply with all of the rules and regulations pertaining to Landlord's building as set forth now or in future amendments. Tenant further agrees to abide by such rules and regulations as they may be expanded, modified or amended from time to time by Landlord."

97.

Under Paragraph 27 of the Lease, the Landlord Defendants, "... may elect to terminate this Lease and any and all interest and claim of the Tenant by virtue of such Lease, whether such interest or claim is existing or prospective, and to terminate all interest of the Tenant in the Leased

Page 23 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Premises. Such termination shall, at the election of the Landlord, also terminate any sublease by the Tenant, whether or not the Landlord has theretofore consented to such sublease."

98.

Upon information and belief, the Landlord Defendants knew or reasonably should have discovered through the exercise of due care, that Defendants Donahue and Primordial Mountain were using the Subject Property to process and manufacturer cannabis extracts utilizing a BHO extraction system capable of producing commercial-scale quantities of finished BHO extracts, as well as storing hundreds of gallons of butane onsite, in violation of the Lease.

99.

The Lease gives the Landlord Defendants sufficient control of the Subject Property to prevent the injurious conduct of Defendants Donahue and Primordial Mountain in processing and manufacturing cannabis extracts by way of a closed loop, BHO extraction system, as well as storing hundreds of gallons of butane onsite.

100.

The Landlord Defendants were negligent in leasing the Subject Property to Defendants Donahue and Primordial Mountain and/or failing to terminate the Lease upon discovering the existence of the BHO extraction systems and butane storage equipment on the site of the Subject Property.

101.

The Lease imposes on the Landlord Defendants a duty to take reasonable steps to provide for Mr. Eldridge's safety by monitoring the use of the Subject Property. The Landlord Defendants were negligent in failing to monitor Defendant Donahue's and Defendant Primordial Mountain's use of the Subject Property.

102.

The Landlord Defendant's level of control over the Subject Property makes the Landlord

Page 24 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Defendants possessors over the Subject Property, which justifies holding the Landlord Defendants liable for injuries and death to Mr. Eldridge caused by leasing the Subject Property to Defendants Donahue and Primordial Mountain, and by failing to monitor the business activities of Defendants Donahue and Primordial Mountain, in particular their installation and operation of a BHO cannabis extraction system and storage of butane gas.

## FIFTH CLAIM FOR RELIEF

### Strict Products Liability – Failure to Warn

*(Against Defendants Industrial Source and HFS)*

103.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 102 above as if fully set forth herein.

104.

Defendants Industrial Source and HFS (hereinafter collectively referred to as the "Product Defendants") had a duty to warn of the significant risk of physical harm presented by butane and equipment used to store, process, and manufacture cannabis extracts utilizing butane (collectively "butane products").

105.

The hazards and consequences associated with un-odorized butane vapors migrating to remote ignition sources such as furnaces and igniting are not open and obvious.

106.

The Product Defendants knew or should have known that the hazards and consequences associated with butane and butane products were not open and obvious. As a result, it was critical that the warnings and instructions issued and provided with the butane and butane products inform consumers like Mr. Eldridge of the hazards and consequences of using them.

107.

Because no substantive warnings or instructions informing of the hazards and

Page 25 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone. (503) 224-3018
Facsimile: (503) 222-0693

OSIC-000416

Verified Correct Copy of Original 4/19/2024.

Verified Correct Copy of Original 4/19/2024.

consequences of using butane or butane products were provided, they were unreasonably dangerous.

108.

The Product Defendants, in their respective roles as manufacturers, marketers, labelers, distributors and sellers, as described above in this Complaint, had a duty to provide reasonable warnings, including warnings and information about the nature and specific harm of the use of butane and butane products in enclosed areas and/or for one of its intended functions, *i.e.* the preparation of butane hash oil. This includes providing warnings about the dangers not only of the use of butane in an enclosed area, but also of the dangers and hazards of preparing BHO in an unlicensed extraction facility, and the dangers presented by flammable and explosive butane vapors.

109.

Using the butane and butane products in the way the Product Defendants manufactured, marketed, distributed and sold them was more dangerous than the ordinary consumer would expect, and the Product Defendants had a duty to provide a fair and adequate warning of the foreseeable and known consequences of using the butane and butane products and/or the consequences of intended, foreseeable and/or known "misuse" of the butane and butane products.

110.

The Product Defendants breached their duty to adequately warn consumers such as Mr. Eldridge of the dangers and hazards associated with butane and butane products. Upon information and belief, the warnings and labeling which accompanied the butane and butane products causing Mr. Eldridge's injuries specifically failed to warn that:

a)      Butane is heavier than air and tends to accumulate at floor level when it escapes into the vapor space;

b)      Butane vapors are highly explosive and volatile;

c)      Butane vapors are extremely dangerous when they come into contact with a source

Page 26 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Verified Correct Copy of Original 4/19/2024.

of ignition, such as the pilot on a gas-fed appliance in a utility room or garage;

d) Butane vapors may travel 50 feet or more to find a source of ignition;

e) Butane vapors may stratify;

f) The vapors created by the use and production of butane hash oil in an enclosed or residential setting may be ignited by a spark or flame;

g) Butane Hash Oil should only be made outdoors and nowhere near a source of flame, including the pilot light on a gas-fed appliance, furnace, or any other source of ignition;

h) Butane Hash Oil should not be made in a utility room or garage or anywhere else gas-fed appliances such as a furnace may be found;

i) Butane is dangerous when used for any purpose, including as a solvent;

j) Gas water heaters or pilots on furnaces can ignite butane vapors during the preparation of BHO or other indoor use;

k) BHO preparation can be extremely dangerous and deadly;

l) Fire-retardant clothing should be worn during the manufacture of Butane Hash Oil;

m) Butane vapors will explode and catch fire causing death or serious injury, including severe burns;

n) Butane vapors cannot be seen;

o) Butane vapors can travel and accumulate in rooms other than the room in which the butane is being used; and

p) The butane sold by Industrial Source is not odorized and thus cannot be smelled.

111.

To provide an adequate warning of the dangers and hazards associated with the butane and butane products, the Product Defendants should have provided written warnings and stickers on, or accompanied with, butane and butane products adequately disclosing their properties, as outlined in the previous paragraph, including pictogram warnings, and also should have provided

Page 27 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Verified Correct Copy of Original 4/19/2024.

a warning brochure and booklet to Mr. Eldridge at the time of purchase. The printed markings on the butane and butane products are defective in that they fail to convey any of the substantive information set forth in the previous paragraph.

112.

Specifically, the butane and butane products contained no instructions regarding one of the butane and butane products uses, namely as a solvent for the manufacture of BHO. The Product Defendants should have provided a booklet or brochure setting forth the dangers and hazards of preparing BHO and also should have provided instructions on how the butane and butane products could be used safely as a solvent and how to prepare BHO.

113.

As retail marketers, distributors and sellers of butane in Oregon, Defendant Industrial Source should have provided explicit warnings about the dangers and hazards of using butane in the manufacture of BHO.

114.

As marketers, distributors, and sellers of equipment used in the processing and manufacturing of BHO in Oregon, Defendant HFS should have provided explicit warnings about the dangers and hazards of using butane in the manufacture of BHO.

115.

The Product Defendants knew or should have known that instructions, warnings, and hazard brochures need to be distributed when butane and butane products are sold to consumers.

116.

The Product Defendants knew or should have known to provide and distribute to consumers intending to manufacture BHO specific instructions and brochures concerning the hazards of manufacturing BHO with butane.

117.

Because the Product Defendants' warnings were insufficient, Mr. Eldridge failed to

Page 28 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-0048
Facsimile: (503) 222-0693

OSIC-000419

understand and appreciate the dangers of the physical environment in which he participated in the manufacture of BHO.

118.

As a direct and proximate result of these failures to instruct and warn, and Mr. Eldridge's reliance thereupon, Mr. Eldridge suffered severe and catastrophic burn injuries resulting in death. as described herein.

119.

Defendant Industrial Source and HFS are strictly liable to Mr. Eldridge, entitling him to the relief requested below, under ORS 30.900 *et seq.*

**SIXTH CLAIM FOR RELIEF**

**Strict Products Liability – Design Defect**

*(Against Defendant HFS)*

120.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 119 above as if fully set forth herein.

121.

Defendant HFS knew and intended that the butane products, which were designed, manufactured, marketed, distributed, sold and/or supplied by Defendant HFS would be purchased by consumers without inspection for defects.

122.

The butane products sold to Mr. Eldridge were unreasonably dangerous and defective at the time it left Defendant HFS' control and at the time it came into the control of Mr. Eldridge in that the butane products were manufactured with components and/or materials that met or exceeded industry standards and therefore were prone to fail under ordinary use.

123.

Mr. Eldridge could not have known that the butane products sold by Defendant HFS were

Page 29 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 324-3018
Facsimile: (503) 222-0693

OSIC-0004420

Verified Correct Copy of Original 4/19/2024.

defective and therefore prone to leak. Further, Mr. Eldridge could not have known that, in the event of a leak in the butane products, he was in the presence of a dangerous amount of butane vapor. The butane products were defective, and said defect caused and contributed to Mr. Eldridge's injuries and death described herein.

**SEVENTH CLAIM FOR RELIEF**

**Negligence**

*(Against Defendants Industrial Source and HFS)*

124.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 123 above as if fully set forth herein.

125.

In their respective roles of designing, manufacturing, marketing, distributing, labeling, supplying and/or selling butane and butane products, Defendants Industrial Source and HFS ("Product Defendants") had a duty to Mr. Eldridge to do so in a reasonable manner to ensure that their products were safe and did not pose an unreasonable risk of causing harm to those who used the products for their intended purpose. Additionally, the Product Defendants had a duty to provide necessary product information and warnings as described herein and to instruct as to the safe and appropriate use of the butane and butane products in the processing and manufacturing of cannabis extracts utilizing a BHO extraction system.

126.

The Product Defendants breached this duty when they placed the defective and dangerous products into the stream of commerce when they knew or should have known of its defective nature and/or propensity to cause harm to individuals such as Mr. Eldridge. Additionally, the Product Defendants breached their duty to instruct and/or warn when they failed to provide instructions to Mr. Eldridge, setting forth the dangers and hazards of the manufacture of Butane Hash Oil and instructions on how the butane and butane products could be used in a "closed loop"

Page 30 – COMPLAINT

NICHOLS LAW GROUP LLC
4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 324-3018
Facsimile: (503) 222-0693

BHO extraction system to manufacture BHO. Such instructions could have been affixed to, and accompanying with, the butane and butane products sold to Mr. Eldridge and Defendants Donahue and Primordial Mountain.

127.

As a direct, foreseeable and proximate result of the Product Defendants' negligence, the defective and dangerous product caused or substantially contributed to the severe injuries and death of Mr. Eldridge described herein.

**DAMAGES**

128.

Plaintiffs reallege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 127 above as if fully set forth herein.

129.

The negligence and/or fault of Defendants, and each of them, in one or more of the particulars set forth herein, was a substantial factor in causing, contributing to, and/or enhancing the following injuries, and ultimately the death of Mr. Eldridge:

a)  Third degree burns of 80-89% of his body; specifically, third degree burns of the left and right legs, left and right arms, torso, face, scalp, pelvis, back, and corneas;

b)  Vision loss;

c)  Acute respiratory failure with hypoxia;

d)  Circulatory failure;

e)  Lactic acidosis;

f)  Shock due to trauma;

130.

The fault and/or negligence of Defendants, and each of them, in one or more of the particulars set forth herein, caused Mr. Eldridge to incur severe and catastrophic pain and suffering between the time of the explosion and the time of his death the following day, thereby entitling the

Page 31 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

estate to an aware of noneconomic damages in a reasonable amount to be awarded by a jury, no to exceed the sum of $10,000,000.

131.

The fault and/or negligence of Defendants, and each of them, in one or more of the particulars set forth herein, caused the estate to incur the sum of $78,552.03 for reasonable and necessary medical, hospital, ambulance, life-flight, and related expenses incurred by Mr. Eldridge between the time of the explosion and the time of his death.

132.

The fault and/or negligence of Defendants, and each of them, caused the beneficiaries of the estate, Jessica Smith, mother, and Reveille Kelton-Eldridge, daughter, to suffer the loss of society and companionship of Mr. Eldridge, entitling the estate to an award of noneconomic damages in a reasonable amount to be awarded by the jury, not to exceed the sum of $10,000,000.

133.

The fault, and/or negligence of Defendants, and each of them, in one or more of the particulars set forth herein, caused the estate to incur a pecuniary loss on behalf of Mr. Eldridge in the approximate sum of $300,000.00 for the decedent's loss of earnings to date, and the approximate sum of $4,000,000.00 as the present value for Mr. Eldridge's lost wages and/or loss of earnings capacity in the future.

134.

Plaintiffs are entitled to interest at 9% per annum for the estate's economically verifiable losses from the date of loss to the date of judgement.

135.

Plaintiff reserve the right to amend this Complaint at the time of trial to more completely allege the estate's economic losses and/or to conform to proof offered at trial.

/ / /

/ / /

Page 32 – COMPLAINT

NICHOLS LAW GROUP LLC

4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

Verified Correct Copy of Original 4/19/2024.

# PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

On behalf of Plaintiff Jessica Smith as the Personal Representative for the Estate of Furious Talon Eldridge:

1. For past medical expenses in the amount of $78,552.03 or an amount to be proven at trial;
2. For past lost income in the amount of $300,000 or an amount proven at trial;
3. For future lost income in the amount of $4,000,000 or an amount to be proven at trial;
4. For noneconomic damages in an amount not to exceed $10,000,000;
5. For costs and disbursement incurred herein
6. For interest according to law; and
7. For such other relief as the court deems proper.

On behalf of Plaintiffs Reveille Kelton-Eldridge, by and through her guardian ad litem, Kloey Kelton, and Jessica Smith, individually:

1. For past medical expenses in the amount of $78,552.03 or an amount to be proven at trial;
2. For past lost income in the amount of $300,000 or an amount proven at trial;
3. For future lost income in the amount of $4,000,000 or an amount to be proven at trial;
4. For noneconomic damages in an amount not to exceed $10,000,000;
5. For costs and disbursement incurred herein
6. For interest according to law; and
7. For such other relief as the court deems proper.

DATED this 18 day of April 2024.

NICHOLS LAW GROUP

Geoff M. Nichols, OSB No. 153973
Attorney for Plaintiffs

Trial Attorney:
Geoff M. Nichols, OSB No. 153973

Page 33 – COMPLAINT

NICHOLS LAW GROUP LLC
4504 S Corbett Ave, Ste 200
Portland, OR 97239
Phone: (503) 224-3018
Facsimile: (503) 222-0693

OSIC_000424

# EXHIBIT D



**Liberty Mutual Insurance**

**Commercial Claims**
**Field Operations**
**P O Box 5014**
**Scranton, PA 18505**
**(619) 744-6817**
**(888) 268-8840 Fax**

July 12, 2024

Primordial Mountain
Attn: Joseph Donahue
1508 Antelope Rd
White City, OR 97503

RE:

| | |
|---|---|
| First Named Insured: | Primordial Mountain LLC |
| Parties Seeking Coverage: | Primordial Mountain LLC; Joseph Donahue |
| Plaintiffs: | Jessica Smith as Personal Representative of the Estate of Furious Talon Eldridge; Kloey Kelton as Guardian Ad Litem for Reveille Kelton-Edridge |
| Claim No. | 23930526 |
| Underwriting Company: | Ohio Security Insurance Company |
| Lawsuit Caption: | Jessica Smith; et al. v. Primordial Mountain LLC dba CBDaily Remedies; Joseph P. Donahue III; et al. |
| Court: | Circuit Court of the State of Oregon County of Multnomah |
| Docket No.: | 24CV18892 |

Dear Mr. Donahue:

This letter confirms receipt of the above-referenced lawsuit ("Lawsuit"), in which you and Primordial Mountain LLC (hereafter collectively "Primordial Mountain") have been named as defendants.

This letter provides our coverage position with regard to the Lawsuit. As more fully described in this letter, we will provide a defense to you for the Lawsuit, subject to the following reservation of rights.

As to the Lawsuit, we fully and completely reserve our rights under the Policy and at law to disclaim insurance coverage, in whole or in part, at a later date as warranted. Please be advised that indemnification may not be available for the relief sought in the Lawsuit. In addition, we reserve the right to amend and supplement this letter. The basis for our coverage position and reservation of rights is described below.

**THE LAWSUIT**

The Lawsuit filed by Jessica Smith as Personal Representative of the Estate of Furious Talon Eldridge; and Kloey Kelton as Guardian Ad Litem for Reveille Kelton-Edridge ("Plaintiff") against Primordial Mountain alleges that

Page 2 of 8

July 12, 2024
Page 2

**Primordial Mountain was created by Joseph Donahue in 2017 for the business of manufacturing, processing, and selling cannabis and/or cannabis extracts to the general public. On June 5, 2020, Primordial Mountain leased a warehouse facility at 1508 Antelope Road in White City, Oregon, from defendants Thomas Leach and Marcy Laurent Leach. Primordial Mountain used the premises to extract CBD and/or THC from cannabis through a hydrocarbon extraction process using a butane gas system. On April 21, 2021, Furious Talon Eldridge, a consultant and/or contractor hired by Primordial Mountain for purchasing, assembling and operating the butane system, was working at the leased location with other employees when the butane system leaked and then exploded while Eldridge and Donahue were inside the building. Eldridge suffered severe and catastrophic injuries and died the following day.**

**The suit alleges all defendants knew or should have known the butane system created an unreasonable risk of harm to Eldridge and are liable for failing to operate the system safely. Specifically, the suit alleges defendants Donahue and Primordial Mountain are liable under the following causes of action: Premises Liability for failing to maintain the location in a safe condition; and Employer Liability for failing to maintain a safe place of employment per Oregon's Safe Employment Act.**

**The suit seeks the following damages on behalf of each plaintiff: $78,552.03 in past medical expenses, $300,000 in past lost income, $4,000,000 in future lost income, $10,000,000 in noneconomic damages, plus costs of suit and interest.**

The above information summarizes the allegations in the Lawsuit. Please refer to the Lawsuit for the complete allegations.

## THE POLICY

Ohio Security Insurance Company issued the following Commercial General Liability policy to Primordial Mountain LLC, hereinafter "Policy":

> Policy Number: **BLS (22) 63 09 90 57**
> Effective Dates: **04/15/2021 to 04/15/2022**

The **Commercial General Liability Coverage Form CG00 01 04 13** and endorsements for the above policy period state in relevant part as follows:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
> The word "insured" means any person or organization qualifying as such under Section **II –** Who Is An Insured.

Page 3 of 8

July 12, 2024
Page 3

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I - COVERAGES
## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

    b. This insurance applies to "bodily injury" and "property damage" only if:
        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
        **(2)** The "bodily injury" or "property damage" occurs during the policy period…

*   *   *

Certain exclusions are enumerated in the Policy and act to limit or bar coverage under the facts of this matter as follows:

2. **Exclusions**

    This insurance does not apply to:

    …

    d. **Workers' Compensation And Similar Laws**

    Any obligation of the insured under workers' compensation, disability benefits or unemployment compensation law or any similar law.

    e. **Employer's Liability**

    "Bodily injury" to"

    **(1)** An "employee" of the insured arising out of and in the course of:
        **(a)** Employment by the insured; or
        **(b)** Performing duties related to the conduct of the insured's business; or
    **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

    This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

    This exclusion does not apply to liability assumed by the insured under an "insured contract".

*   *   *

## SECTION V - DEFINITIONS

Page 4 of 8

July 12, 2024
Page 4

3.  "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.[1]

…

5.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

…

9.  "Insured contract" means:
    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";…

…

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

*   *   *

The CGL Policy is amended by endorsement **CG 21 18 10 17** which states:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OREGON - MARIJUANA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A.  The following exclusion is added:

This insurance does not apply to:

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

    a.  The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";

    b.  The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or…

B.  The following definition is added to the **Definitions** section:

"Marijuana":

1.  Means:

Page 5 of 8

July 12, 2024
Page 5

> Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

2. Paragraph **B.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

   **a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

   **b.** Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

   **(1)** Resin, oil or wax;

   **(2)** Hash or hemp; or

   **(3)** Infused liquid or edible marijuana;

   whether derived from any plant or part of any plant set forth in Paragraph **B.2.a.** above or not.

* * *

The Policy is incorporated by reference into this letter in its entirety. Although we have attempted to include all of the policy provisions that we believe are pertinent, the provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms, definitions, exclusions, conditions, endorsements and/or limits of liability contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

**APPLICATION OF POLICY/COVERAGE POSITION**

We list below the grounds under which some or all aspects of the Lawsuit may not be covered under the Policy. Based upon the information available to date, the grounds for our reservation of rights include, but are not limited to, the following:

- The Policy is subject to all of the terms, conditions, provisions, exclusions, definitions, endorsements and limits of liability contained in such Policy, which are enforceable as written.

- This insurance does not apply to any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law. To the extent that this matter involves such obligation, there is no insurance coverage for that obligation under Coverage A Bodily Injury and Property Damage Liability.

- This insurance does not apply to "bodily injury" to an "employee" of the insured arising out of and in the course of employment by the insured or while performing duties related to the conduct of the insured's business. To the extent that this matter involves "bodily injury" such as that described, there is no insurance coverage for that injury under Coverage A Bodily Injury and Property Damage Liability.

July 12, 2024
Page 6

- This insurance does not apply to "bodily injury" arising from the design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana" designed for bodily ingestion, inhalation, absorption, or consumption. To the extent this matter involves "bodily injury" arising from "marijuana" as described, there is no insurance coverage.

Please be advised that, subject to the foregoing reservation of rights, we have retained Jeff Hansen of the Chock Barhoum law firm located in Portland, Oregon, to defend you in this Lawsuit. **You may wish to provide a copy of this letter to defense counsel. In addition, you have the right to retain your own personal counsel at your expense to advise you on the defense and coverage issues.**

Please be further advised that our provision of defense in this Lawsuit is subject to a reservation of our right to deny coverage (including any obligation to indemnify) for any settlement or judgment paid or incurred as a result of this Lawsuit, as well as our right to contest the existence of coverage in a declaratory judgment action. Among other things, to the extent permitted by applicable law, we reserve the right to (1) withdraw from the defense provided in the event it is determined that we have no obligation to defend in this Lawsuit, (2) seek allocation and/or reimbursement of defense costs paid in this action in whole or in part, and (3) intervene in the Lawsuit for purposes of undertaking discovery and submitting proposed special verdict questions to differentiate covered from non-covered claims and/or asserting non-coverage.

Our participation in the defense of the Lawsuit does not waive or change the Policy terms, nor does it waive our right to dispute issues of coverage as set forth herein or require us to make any settlement offers or satisfy any judgments on your behalf for claims not covered by the Policy.

If notice to other potentially applicable insurers has not been provided already, we also request that notice of this Lawsuit be provided to every insurer whose coverage is potentially implicated. With respect to each such insurer, please provide us with the insurer name, the name, address and telephone number of a contact person, and the policy periods and limits of liability of all policies it issued. We also request that you provide us with copies of your letters notifying each such insurer of this Lawsuit, and of any and all written responses.

While we have sought to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be construed as a waiver or estoppel of any right or basis which we may have to disclaim coverage under the Policy or applicable law, and we reserve all rights in this regard.

Further, if there is a judgment in excess of the applicable and available Policy limit, there is no coverage for the excess amount. In order to protect your interests, you may want to consult an attorney, of your own choosing and at your own expense, to advise you on any potential exposure in excess of your applicable and available Policy limits. If you have other insurance available, you should immediately notify those insurance companies of this Lawsuit. If you do not have additional insurance, and a judgment is rendered in excess of the applicable and available limits of the Policy, then you would be responsible for the excess amount.

This reservation of rights letter is based on facts and information currently known. We reserve the right to raise additional coverage issues as appropriate upon further investigation and discovery. If

July 12, 2024
Page 7

you have any facts or other information that you believe may impact our coverage position, we request that you bring such information or pleadings to my immediate attention, so that we may evaluate same and assess whether such information or pleading impacts our coverage position or obligations. Finally, if you receive an amended Lawsuit, please provide us with a copy for our review.

Should you have any questions or comments concerning this letter, please feel free to call or email me. My contact information is below.

Sincerely,

Scott Duncan
Claim Specialist
Phone (619) 744-6817
Fax (888) 268-8840

# EXHIBIT E



**Liberty Mutual Insurance**

**Commercial Claims**
**Field Operations**
**P O Box 5014**
**Scranton, PA 18505**
**(619) 744-6817**
**(888) 268-8840 Fax**

October 15, 2024

Randall Leach and Mary Leach
c/o Hitt Hiller Monfils Williams LLP
Attn: Scott T. Schauermann
Via email: sschauermann@hittandhiller.com

RE:

| | |
|---|---|
| First Named Insured: | Primordial Mountain LLC |
| Parties Seeking Coverage: | Randall Leach and Mary Leach |
| Plaintiffs: | Jessica Smith as Personal Representative of the Estate of Furious Talon Eldridge; Kloey Kelton as Guardian Ad Litem for Reveille Kelton-Eldridge |
| Claim No. | 23930526 |
| Underwriting Company: | Ohio Security Insurance Company |
| Lawsuit Caption: | Jessica Smith; et al. v. Primordial Mountain LLC dba CBDaily Remedies; Joseph P. Donahue III; et al. |
| Court: | Circuit Court of the State of Oregon County of Multnomah |
| Docket No.: | 24CV18892 |

Dear Randall Leach and Mary Leach:

This letter confirms receipt of the above-referenced lawsuit ("Lawsuit"), in which you have been named as defendants. Scott Schauermann tendered this matter to us on your behalf pursuant to a written contract you had with Primordial Mountain LLC.

As more fully described in this letter, we will provide you with a defense in the Lawsuit as an insured, subject to a reservation of rights. We hereby fully and completely reserve our rights with respect to the Lawsuit under the policy and at law. In addition, we reserve the right to supplement this coverage position as our investigation continues and as discovery progresses in the Lawsuit.

**THE LAWSUIT**

The Lawsuit filed by Jessica Smith as Personal Representative of the Estate of Furious Talon Eldridge; and Kloey Kelton as Guardian Ad Litem for Reveille Kelton-Eldridge ("Plaintiff") filed against you alleges that

Page 2 of 8

October 15, 2024
Page 2

**You owned a warehouse facility located at 1508 Antelope Road in White City, Oregon. On June 5, 2020, Primordial Mountain LLC entered into a lease agreement with you. Primordial Mountain's tenancy was to "occupy the Leased Premises for CBD products and related services." On April 21, 2021, Furious Talon Eldridge, a consultant and/or contractor hired by co-defendant Joseph Donahue and/or Primordial Mountain, was working at the warehouse location with other Primordial Mountain employees when a butane system being operated on the premises leaked and then exploded while Eldridge and Donahue were inside the building. The explosion caused severe and catastrophic injuries to Eldridge, and he died the next day due to the injuries.**

**The suit alleges you knew or should have known the Primordial Mountain operation created an unreasonable risk of harm to Mr. Eldridge. Specifically, the suit alleges you are liable due to Negligence, Premises Liability Negligence and Negligence Per Se under the Oregon Safe Employment Act.**

**The suit seeks the following damages on behalf of each plaintiff: $78,552.03 in past medical expenses, $300,000 in past lost income, $4,000,000 in future lost income, $10,000,000 in noneconomic damages, plus costs of suit and interest.**

The above information summarizes the allegations in the Lawsuit. Please refer to the Lawsuit for the complete allegations against you.

**THE POLICY**

Ohio Security Insurance Company issued the following Commercial General Liability policy to Primordial Mountain LLC, hereinafter "Policy":

> Policy Number: **BLS (22) 63 09 90 57**
> Effective Dates: **04/15/2021 to 04/15/2022**
> Liability Coverage Limit: **$1,000,000 per occurrence**

The **Commercial General Liability Coverage Form CG00 01 04 13** and endorsements for the above policy period state in relevant part as follows:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
> The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

> **SECTION I - COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

Page 3 of 8

October 15, 2024
Page 3

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
      (2) The "bodily injury" or "property damage" occurs during the policy period…

   \* \* \*

Certain exclusions are enumerated in the Policy and act to limit or bar coverage under the facts of this matter as follows:

2. **Exclusions**

   This insurance does not apply to:

   …

   d. **Workers' Compensation And Similar Laws**

   Any obligation of the insured under workers' compensation, disability benefits or unemployment compensation law or any similar law.

   e. **Employer's Liability**

   "Bodily injury" to"

   (1) An "employee" of the insured arising out of and in the course of:
      (a) Employment by the insured; or
      (b) Performing duties related to the conduct of the insured's business; or
   (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

   This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This exclusion does not apply to liability assumed by the insured under an "insured contract".

   \* \* \*

**SECTION V - DEFINITIONS**

Page 4 of 8

October 15, 2024
Page 4

**3.** "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.[1]

…

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

…

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";…

…

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

* * *

The CGL Policy is amended by endorsement **CG 21 18 10 17** which states:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OREGON - MARIJUANA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**a.** The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or…

**B.** The following definition is added to the **Definitions** section:

"Marijuana":

1. Means:

October 15, 2024
Page 5

> Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

> **2.** Paragraph **B.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

> **a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

> **b.** Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

> > **(1)** Resin, oil or wax;

> > **(2)** Hash or hemp; or

> > **(3)** Infused liquid or edible marijuana;

> > whether derived from any plant or part of any plant set forth in Paragraph **B.2.a.** above or not.

*   *   *

The Policy is incorporated by reference into this letter in its entirety. Although we have attempted to include all of the policy provisions that we believe are pertinent, the provisions set forth above in no way replace the provisions of the actual Policy issued. If you have any questions regarding the terms, definitions, exclusions, conditions, endorsements and/or limits of liability contained in the applicable Policy, you should refer to the Policy itself. To the extent there is any discrepancy between this letter and the Policy, the Policy controls.

## APPLICATION OF POLICY/COVERAGE POSITION

We list below the grounds under which some or all aspects of the Lawsuit may not be covered under the Policy. We fully and completely reserve our rights under the Policy and applicable law to decline insurance coverage under such provisions at a later date as warranted. In addition, it is our intent to incorporate by reference all of the terms of the Policy through this reservation of rights. Based upon the information available to date, the grounds for our reservation of rights under the Policy, or under applicable law, with respect to the Lawsuit, include, but are not limited to, the following:

- The Policy is subject to all of the terms, conditions, provisions, exclusions, definitions, endorsements and limits of liability contained in such Policy, which are enforceable as written.

- This insurance does not apply to any obligation of an insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law. To the extent that this matter involves such obligation, there is no insurance coverage for that obligation under Coverage A Bodily Injury and Property Damage Liability.

- This insurance does not apply to "bodily injury" to an "employee" of an insured arising out of and in the course of employment by the insured or while performing duties related to the conduct of an insured's business. To the extent that this matter involves "bodily injury" such as

October 15, 2024
Page 6

that described, there is no insurance coverage for that injury under Coverage A Bodily Injury and Property Damage Liability.

- This insurance does not apply to "bodily injury" arising from the design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana" designed for bodily injestion, inhalation, absorption, or consumption. To the extent this matter involves "bodily injury" arising from "marijuana" as described, there is no insurance coverage for bodily injury damages.

Please be advised that, subject to the foregoing reservation of rights, we are assigning an attorney to represent you in this Lawsuit. You may wish to provide a copy of this letter to defense counsel. In addition, you have the right to retain your own personal counsel at your expense to advise you on the defense and coverage issues.

Please be further advised that our provision of defense in this Lawsuit is subject to a reservation of our right to deny coverage (including any obligation to indemnify) for any settlement or judgment paid or incurred as a result of this Lawsuit, as well as our right to contest the existence of coverage in a declaratory judgment action. Among other things, to the extent permitted by applicable law, we reserve the right to (1) withdraw from the defense provided in the event it is determined that we have no obligation to defend in this Lawsuit, (2) seek allocation and/or reimbursement of defense costs paid in this action in whole or in part, and (3) intervene in the Lawsuit for purposes of undertaking discovery and submitting proposed special verdict questions to differentiate covered from non-covered claims and/or asserting non-coverage.

Please note that we will not pay for defense fees or costs incurred prior to tender of this claim to us or for any fees or costs relating to any insurance coverage action or advice, or any fees and costs incurred relative to any affirmative claim you may file in this Lawsuit.

Our participation in the defense of the Lawsuit does not waive or change the Policy terms, nor does it waive our right to dispute issues of coverage as set forth herein, or require us to make any settlement offers or satisfy any judgments on your behalf for claims not covered by the Policy.

If notice to other potentially applicable insurers has not been provided already, we also request that notice of this Lawsuit be provided to every insurer whose coverage is potentially implicated. With respect to each such insurer, please provide us with the insurer name, the name, address and telephone number of a contact person, and the policy periods and limits of liability of all policies it issued. We also request that you provide us with copies of your letters notifying each such insurer of this Lawsuit, and of any and all written responses.

While we have sought to identify and address above all relevant insurance coverage considerations, the foregoing specificity is not intended and should not be construed as a waiver or estoppel of any right or basis which we may have to disclaim coverage under the Policy or applicable law, and we reserve all rights in this regard.

Further, if there is a judgment in excess of the applicable and available Policy limit, there is no coverage for the excess amount. In order to protect your interests, you may want to consult an attorney, of your own choosing and at your own expense, to advise you on any potential exposure in excess of your applicable and available Policy limits. If you have other insurance available, you should

Page 7 of 8

October 15, 2024
Page 7

immediately notify those insurance companies of this Lawsuit. If you do not have additional insurance, and a judgment is rendered in excess of the applicable and available limits of the Policy, then you would be responsible for the excess amount.

This reservation of rights letter is based on facts and information currently known. We reserve the right to raise additional coverage issues as appropriate upon further investigation and discovery. If you have any facts or other information that you believe may impact our coverage position, we request that you bring such information or pleadings to my immediate attention, so that we may evaluate same and assess whether such information or pleading impacts our coverage position or obligations. Finally, if you receive an amended Lawsuit, please provide us with a copy for our review.

Should you have any questions or comments concerning this letter, please feel free to call or email me. My contact information is below.

Sincerely,

Scott Duncan
Claim Specialist
Phone (619) 744-6817
Fax (888) 268-8840

cc: Primordial Mountain

Page 8 of 8

**EXHIBIT F**



**WESTERN NATIONAL**
INSURANCE

*The relationship company*

November 13, 2024

CPM Real Estate Services, Inc.
Attn: Mason McKinney, David Wright
718 Black Oak Drive, Suite A
Medford, OR 97504

RE:   *The Estate of Furious Talon Eldridge v. Joseph P. Donahue III et all, Multnomah County Case No. 24CV18892*

|  |  |
|---|---|
| Our Insured: | CPM Real Estate Services, Inc. |
| Policy No: | CPP 1014229 |
| Policy Dates: | November 1, 2020 – November 1, 2021 |
| Date of Loss: | April 21, 2021 |
| Our Claim No: | 1000095337 |

Dear Mr. McKinney and Mr. Wright,

I am writing to advise you that I have taken over the handling of this claim on behalf of Western National Mutual Insurance Company ("Western National"). My contact information is below in my signature line. I am happy to communicate with you at any time regarding this claim.

As you are aware, the above-captioned lawsuit has been filed against CPM Real Estate Services, Inc. ("CPM") in Multnomah County, Oregon (Case No. 24CV1014229). Western National has agreed to jointly defend CPM with Mutual of Eunumclaw Insurance, who is providing a defense to CPM under a policy of insurance issued to Randall and Mary Leach. Christopher Drotzmann of Davis Rothwell Earle & Xochihua is defending CPM in this matter. The transfer of claims handling to me on behalf of Western National does not impact your ongoing defense in any way.

Additionally, I am writing to reiterate our previous reservation of rights in this matter. Western National is defending this matter under a reservation of rights. Please be advised that we fully reserve our rights under the Policy and at law to disclaim insurance coverage in whole or in part as warranted. Further, we reserve our right to amend and supplement this letter. The basis for our reservation of rights is outlined below.

While we are sharing in the defense of this lawsuit as a courtesy to CPM, *we do not believe there is any coverage for indemnification under the policy based on the facts of this loss and the language of the policy issued to CPM.* Our explanation follows.

Pioneer Specialty Insurance Company | a member of the Western National Insurance Group
Edina Corporate Center | 4700 West 77th Street | Edina, MN 55435-4818 | (952) 835-5350 or (800) 862-6070 | www.wnins.com

OUR COMPANIES: AMERICAN FREEDOM | LEGACY INSURANCE SERVICES | PIONEER SPECIALTY
UMIALIK | WESTERN HOME | WESTERN NATIONAL ASSURANCE | WESTERN NATIONAL MUTUAL

CPM Real Estate Services, Inc.
November 13, 2024
Page 2 of 7

## THE FACTS AND LAWSUIT

To briefly reiterate the facts, this lawsuit is related to an incident that occurred at a property owned by Randall and Mary Leach at 1508 Antelope in White City, Oregon. CPM was retained by Mr. and Mrs. Leach as the property manager for leasing this address. Primordial Mountain LLC d/b/a/ CBDaily Remedies ("Primordial Mountain"), also a defendant in the captioned lawsuit, became a tenant at the subject address in White City, Oregon while CPM was managing the property. At the time of this loss, Primordial Mountain was engaged in the business of processing and selling cannabis and cannabis products. Decedent Furious Talon Eldridge is reported to have been an employee of Primordial Mountain.

On April 21, 2021, an incident occurred at the subject property while Decedent Eldridge and others were involved in a process of extracting CBD and/or THC from cannabis through hydrocarbon extraction using butane gas, a process the Plaintiffs have described as "Butane Hash Oil Extraction." During this process, an explosion occurred. Furious Talon Eldridge did not survive the explosion. The captioned lawsuit has been filed by his Estate for recovery of economic loss and general damages related to his death. The lawsuit seeks to recover damages under legal theories of wrongful death, premises liability, negligence per se, violations of the Oregon Safe Employment Act, strict products liability, and negligence.

## THE POLICY

CPM has a Commercial Policy Package in place with Western National with effective dates of November 1, 2020 through November 2, 2021. The Commercial General Liability Policy has an applicable per occurrence limit of $1,000,000. Coverage for this loss is governed by forms CG0001 (04/13) and CG2118 (10/17); the relevant policy language is cited below.[1]

The Insuring Agreement of CG0001 (04/13) states as follows:

**SECTION I - COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
   **1. Insuring Agreement**
      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
         (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance;
           and

---

[1] Terms cited with quotation marks within the policy have specific meanings. Definitions of all relevant terms are provided in Appendix A.

CPM Real Estate Services, Inc.
November 13, 2024
Page 3 of 7

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage" or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

This coverage is modified by form CG2118 (10/17), which states as follows:

## OREGON – MARIJUANA EXCLUSION

**A.** The following exclusion is added:  This insurance does not apply to:

  1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

   a. The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana:;

   b. The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or

  2. "Property Damage to "marijuana".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offence which caused the "personal and advertising injury" involved that which is described in Paragraph A.1. or A.2. above.

Page 4 of 8

CPM Real Estate Services, Inc.
November 13, 2024
Page 4 of 7

However, this exclusion does not apply to any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily:
a.  Ingestion
b.  Inhalation
c.  Absorption; or
d.  Consumption

The complete definition of "marijuana" as used in this endorsement is included in Appendix A.

## COVERAGE ANALYSIS

As noted in the brief factual restatement above, this loss arises **solely** out of the extraction of CBD/THC from cannabis by tenant Primordial Mountain at a property managed by CPM.   As CPM's policy excludes all coverage for damages resulting from any of these activities, and these activities are the sole cause of the subject loss and lawsuit, Western National believes there is no coverage for this loss under the policy.

As we do not believe there is any coverage for this loss under the policy, *Western National will not extend any coverage for any payment related to settlement or, should the case proceed to trial, any verdict or judgment against CPM related to this matter.*

## DAMAGES

The lawsuit filed against CPM and other defendants seeks damages in the amount of $24,378,552.03.  These damages are alleged to include Mr. Eldridge's past and future medical expenses, past and future wage loss and general damages.  We have no information at this time on the validity of any of the claims presented at this time.

As *Western National is not extending any coverage for indemnification in this loss*, we advise you to place any and all other carriers who may provide some coverage for this loss on notice of this lawsuit.  We are aware that Mutual of Eunumclaw is providing a defense in this matter under reservation of rights, and that Hiscox is participating in your defense as your Errors and Omissions carrier.  If there are other carriers who may provide any coverage, we encourage you to submit this lawsuit for their review at your earliest convenience.

CPM has the right, at its own expense, to retain personal defense counsel in this matter.  Western National will cooperate fully with any counsel retained by CPM.

## CONCLUSION

*Western National has agreed to share in the defense of this matter as a courtesy to CPM. Western National is not extending any coverage for indemnification related to this loss based*

CPM Real Estate Services, Inc.
November 13, 2024
Page 5 of 7

**on our current understanding of the litigation.** Western National's conduct in defending the above-referenced lawsuit under this reservation of rights should not be construed by you as a waiver of any of the rights Western National may have by virtue of the language of its policy.

Western National hereby expressly reserves any and all rights that it may have, not only by virtue of the above-quoted policy language, but any and all rights stemming from the declarations, insuring agreements, definitions, exclusions, conditions and endorsements contained in Policy No. CPP 1014229.

In the event additional information is disclosed that has a bearing on any coverage issues, Western National further reserves the right to assert other coverage defenses or withdraw from the defense of this case. Western National further reserves the right to amend this reservation of rights as necessary.

Western National is not waiving any of its rights or any relevant policy requirements or provisions. No waiver or estoppel is intended by, or should be inferred from, this letter.

If there is additional documentation or information you would like Western National to consider in its evaluation of coverage, please submit that to me at your earliest convenience. Please feel free to contact me at any time should you wish to discuss this matter.

Sincerely,

*Shone Huesman*

Shone Huesman
Senior Claims Representative
Western National Mutual Insurance Co.
Phone: 952-921-3140 ext. 3140
E-mail: shone.huesman@wnins.com

CPM Real Estate Services, Inc.
November 13, 2024
Page 6 of 7

## *Appendix A: Definitions*

### Form CG 0001 (04/13)

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

    c. All other parts of the world if the injury or damage arises out of:

        (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

        (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

        (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

. . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement" or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software,

Page 7 of 8

CPM Real Estate Services, Inc.
November 13, 2024
Page 7 of 7

hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

## Form 2118 (10/17):

**B.** The following definition is added to the **Definitions** section:

"Marijuana":

1. Means:
   Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC is natural or synthetic.

2. Paragraphs **B.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:
   a. Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or
   b. Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:
      (1) Resin, oil or wax
      (2) Hash or hep; or
      (3) Infused liquid or edible marijuana;
      Whether derived from any plant or part of any plant set form in Paragraph **B.2.a.** above or not.