IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>     v.<br><br>JESSICA SMITH, individually and as Personal Representative of the Estate of Furious Talon Eldridge, deceased, KLOEY KELTON, as guardian ad litem for R. K.-E., a minor, CPM REAL ESTATE SERVICES, INC., an Oregon corporation, JOSEPH P. DONAHUE, III, an individual, MARY LAURENT LEACH, an individual, RANDALL LEACH, an individual, and PRIMORDIAL MOUNTAIN, LLC, d/b/a CBDAILY REMEDIES, an Oregon Limited Liability Company,<br><br>        Defendants. | Case No. 3:25-cv-00647-MC<br><br>OPINION AND ORDER |

MCSHANE, Judge:

Plaintiff Ohio Security Insurance Company ("Ohio Security") brings this action for declaratory relief pursuant to 28 U.S.C. § 2201 to determine its duties and obligations to defend Defendants Joseph P. Donahue, III, Primordial Mountain, LLC, CPM Real Estate Services, Inc., and Mary Laurent Leach and Randall Leach under a contract of insurance with respect to ongoing litigation in Oregon state court. Compl., ECF No. 1. On July 16, 2025, Mary Laurent Leach and Randall Leach moved to dismiss the Complaint. Leach Mot., ECF No. 18. Simultaneously, CPM

1 – OPINION AND ORDER

Real Estate Services, Inc. ("CPM") filed a Motion to Dismiss, joining the Leaches' Motion without further argument. ECF No. 20. For the following reasons, the Leaches' Motion is DENIED.

## BACKGROUND

### I. Procedural History

Following multiple extensions, on July 2, 2025, Jessica Smith and Kloey Kelton filed an Answer to the Complaint and asserted a counterclaim against Ohio Security. ECF No. 17. On July 16, 2025, the Leaches and CPM each filed motions to stay Ohio Security's claims seeking a declaratory judgment that it has no obligation to indemnify the Leaches or CPM (the "Indemnity Claims"). ECF No. 19, 21. Ohio Security did not oppose. *Id.* On September 5, 2025, the Court stayed the Indemnity Claims pending resolution of the underlying state court action. ECF No. 37. In addition, on July 28, 2025, Ohio Security moved for entry of default against Joseph P. Donahue, III ("Donahue") and Primordial Mountain, LLC ("Primordial"), Donahue's company. ECF No. 27. The clerk entered default as to Donahue and Primordial on September 3, 2025. ECF No. 36.

Separately, on July 16, 2025, the Leaches and CPM each moved to dismiss the Complaint. Ohio Security responded to the motions on July 30, 2025. Pl.'s Resp, ECF No. 29. On August 13, 2025, the Leaches filed a Reply, which CPM also joined. Reply, ECF No. 30; ECF No. 31.

### II. The Underlying Action

#### A. The Incident

On April 18, 2024, the Estate of Furious Talon Eldridge ("Eldridge Estate") sued Donahue, Primordial, the Leaches, CPM, and other entities that sold components for a Butane Hash Oil ("BHO") extraction system in Multnomah County Circuit Court in the State of Oregon ("Underlying Action"). *See generally* ECF No. 1-1 Ex. C., p.71–104 ("Eldridge Compl."); *Estate of Eldridge v. Donahue*, Case No. 24CV18892 (Or. Circ. Ct.). The Eldridge Estate's claims arise

from a butane gas leak and explosion from which Mr. Eldridge suffered severe burns and later died. The Underlying Action is ongoing and set for a jury trial beginning on April 6, 2026.

The following is drawn from the allegations of the Eldridge Complaint. The Leaches owned an industrial warehouse at 1508 Antelope Road in White City, Oregon (the "Property") that was managed by CPM. Eldridge Compl. ¶¶ 24–26. On June 5, 2020, the Leaches leased the Property to Donahue's company, Primordial. *Id*. ¶ 24. Primordial and Donahue stated in the lease agreement that the purpose for occupying the Property was to make "CBD Products." *Id*. ¶¶ 23, 27. Donahue and Primordial used the property to operate a BHO extraction lab designed to extract cannabinoids, including tetrahydrocannabinol (THC) and cannabidiol (CBD), from raw cannabis using butane gas. *See id.* ¶¶ 29–32. Butane gas is hazardous, extremely flammable, odorless, highly volatile, and has a "wide explosive range." *Id*. ¶¶ 30, 47.

Donahue hired Mr. Eldridge to help design, construct, and operate the BHO extraction system. Eldridge Compl. ¶ 33. The Eldridge Estate alleges that although the BHO process is a common process to manufacture concentrated cannabis products, Primordial used components that did not meet applicable certification standards and would not have met minimum licensing requirements for such an operation. *Id.* ¶¶ 38–41. Donahue, Eldridge, and Primordial operated a BHO extraction system at the Property without ever obtaining the required license. *Id.* ¶¶40–41. Eldridge had no expertise in fire safety, industrial code compliance, or cannabinoid extraction safety protocols. *Id.* ¶ 34. The Property lacked safety features, including explosion venting, fire suppression systems, proper ventilation, and emergency lighting. *Id.* ¶ 43.

On April 21, 2021, Mr. Eldridge and others were operating the BHO extraction system at the Property when a component failed and leaked butane into the building. Eldridge Compl. ¶ 44. Everyone evacuated the Property. *Id*. Donahue then directed Mr. Eldridge to accompany him back

into the Property to stop the leak. *Id*. Before Mr. Eldridge could stop the leak, the butane ignited, causing an explosion, destroying the Property, and severely burning Mr. Eldridge. *Id.* Mr. Eldridge died the following day. *Id*. ¶ 45.

### B. The Eldridge Complaint Claims

The Eldridge Estate alleges that Donahue, Primordial, the Leaches, and CPM are responsible for creating or permitting hazardous conditions during the manufacture of marijuana derivatives in violation of building codes, fire codes, and employment safety laws. The Eldridge Estate alleged seven claims: (1) Premises Liability; (2) Employer Liability; (3) Negligence *Per Se* according to the Oregon Safe Employment Act; (4) Negligence; (5) Strict Products Liability – Failure to Warn; (6) Strict Products Liability – Design Defect; and (7) Negligence (against product defendants). *See generally* Eldridge Compl. ¶¶ 52–127.

The Leaches and CPM are named in Claims One, Three, and Four. In Claim One for Premises Liability, the Eldridge Estate alleges the Leaches knew or should have known of "deficiencies and code violations" that created an "unreasonably dangerous condition" at the Property, and that the Leaches breached their duty to Mr. Eldridge by failing to maintain the Property in a "reasonably safe condition." Eldridge Compl. ¶¶ 60, 64. The Estate concludes Eldridge's injuries were the "proximate result of the negligence and breaches of duty" of the Leaches and CPM. *Id*. ¶ 65. In Claim Three, for Negligence *Per Se*, the Eldridge Estate alleges "breaches of the Oregon Safe Employment Act caused or were a substantial factor in causing" Mr. Eldridge's injuries. *Id*. ¶ 91. In Claim Four for Negligence, the Eldridge Estate alleges the Leaches and CPM knew or should have known that Donahue and Primordial were operating the BHO system and storing butane at the Property and were either negligent in initially leasing the Property to Donahue and Primordial or negligently permitted Donahue and Primordial to continue their

operation by failing to terminate the lease. *Id*. ¶¶ 98, 100–02.

### III.  The Ohio Security Policy

At the time of Eldridge's injury, Ohio Security insured Primordial pursuant to Commercial General Liability Policy No. BLS (22) 63 09 90 57 (the "Policy"). Compl. ¶ 4.2; Policy, ECF No. 1-1 Ex. A, p.1–68. In addition to defending Primordial, Ohio Security is defending Donahue, CPM, and the Leaches in the Underlying Action, under a reservation of rights. Compl. ¶ 4.44; ECF No. 1-1 Ex. D–F, p.105–128. The lease agreement between the Leaches and Primordial required Primordial to provide additional insured coverage to the Leaches. ECF No. 1-1 Ex. E, p.113–20.

The Policy generally provides coverage for "bodily injury" or "property damage" caused by an "occurrence" (Policy p.25–26 ("CG 00 01 04 13" at 1–2)):

> SECTION I - COVERAGES
> COVERAGE A - BODILY INJURY AND PROPERTY
> DAMAGE LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>       (2) The "bodily injury" or "property damage" occurs during the policy period;
>    . . .
>    e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

The Policy defines "bodily injury," "occurrence," and "property damage" as follows

5 – OPINION AND ORDER

(Policy p.38, 40 ("CG 00 01 04 13" at 14, 16)):

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> 17. "Property damage" means:
>     a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

The Policy also contains a "Marijuana Exclusion." Policy p.43 ("CG 21 18 10 17"). In relevant part, it provides that "'bodily injury' . . . arising out of, caused by, or attributable to, whether in whole or in part, . . . the 'design [or] manufacture' of 'marijuana'" is excluded from coverage (*id.*):

> A. The following exclusion is added:
> This insurance does not apply to:
>   1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:
>      a. The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";
>      b. The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or
>   2. "Property damage" to "marijuana".
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph A.1. or A.2. above.
> . . .
> B. The following definition is added to the Definitions section:
> "Marijuana":
>   1. Means: Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.
>   2. Paragraph B.1. above includes, but is not limited to, any of the following containing such THC or cannabinoid:
>      a. Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

6 – OPINION AND ORDER

  b. Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:
    1) Resin, oil or wax;
    2) Hash or hemp; or
    3) Infused liquid or edible marijuana;
whether derived from any plant or part of any plant set forth in Paragraph B.2.a. above or not.

## LEGAL STANDARD

### I. Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 679.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### II. Insurance Contracts and Insurers' Duty to Defend

A federal court, sitting in diversity, applies state law in interpreting an insurance policy. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). Interpretation of an insurance policy is a question of law. *Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 224 Or. App. 235, 241 (2008). If a term or phrase is expressly defined, the court must

apply the provided definition. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650 (2006). Because the insurer has the burden of drafting clear and unambiguous insurance policies, genuine ambiguity in contractual language is construed in favor of the insured. *See Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 470–71 (1992); *North Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 29 (2001). Accordingly, coverage exclusions are to be narrowly construed. *Am. Econ. Ins. Co. v. Hughes,* 121 Or. App. 183, 186 (1993). And whether an exclusion applies is a question of law that seeks to determine the parties' intent. *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or. App. 468, 478 (2010).

An insurer has a duty to defend the insured only "if the claim made against the insured is one covered by the insurer." *Casey v. Nw. Sec. Ins.,* 260 Or. 485, 489 (1971). Under Oregon law, a court resolves the issue of an insurer's duty to defend by analyzing only two documents: the insurance policy and the operative complaint in the underlying liability action. *Abrams v. Gen. Star Indem. Co.*, 335 Or. 392, 396–97 (2003). Under Oregon law, if the complaint in the underlying action contains allegations of covered conduct as to any claim, the insurer has a duty to defend. *See id.* at 399–400. The duty to defend remains even if the complaint also contains allegation of non-covered or excluded conduct as to other claims, or within the same claim if the facts alleged would support liability for conduct covered by the policy. *See id.*; *Ferguson v. Birmingham Fire Insurance Co.*, 254 Or. 496, 507 (1969). "[T]he insured has the burden to prove coverage while the insurer has the burden to prove an exclusion from coverage." *Fountaincourt Homeowners' Ass'n v. Fountaincourt Dev., LLC*, 360 Or. 341, 360 (2016) (cleaned up).

## DISCUSSION

### I. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1332. The parties are

completely diverse and the amount in controversy is over $75,000.00. Compl. ¶¶ 2-1–2.10 (citizenship and identities of parties); ¶¶ 4.42–4.43 (accounting of requested damages in Eldridge Complaint). In addition, because an insurer's declaratory relief action to determine a duty to defend their insured in a pending state court case creates a case or controversy under Article III, even when the underlying liability action has not yet proceeded to judgment, Ohio Security has standing here. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (citing *Maryland Cas. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)). The Court exercises its discretion to consider Ohio Security's declaratory judgment action. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–97 (1942); *see also Century Sur. Co. v. Lopez*, 2016 WL 4216782, at *2 (D. Or. Aug. 9, 2016).

## II.     Duty to Defend Under Marijuana Exclusion

The parties do not dispute that Donohue and Eldridge were engaged in the "design [or] manufacture" of "Marijuana" under the Policy's definitions. *See* Pl.'s Resp. 4. The issue is whether the claims in the Eldridge Complaint concern injury "arising out of, caused by, or attributable to, whether in whole or in part," the manufacture of marijuana. Leach Mot. 5; Pl.'s Resp. 6. Accordingly, to survive a motion to dismiss here, Ohio Security must plead sufficient facts to plausibly establish that no part of any claim in the Underlying Action is covered under its policy. *See Abrams,* 335 Or. at 399–400; *Fountaincourt Homeowners' Ass'n*, 360 Or. at 360. That is, that the Eldridge Complaint "allege[s] only conduct that clearly falls outside the coverage of the policy." *Ledford v. Gutoski*, 319 Or. 397, 403 (1994).

In support of dismissal, the Leaches argue that Elderidge Estate could recover against the Leaches or CPM in the Underlying Action as to the relevant claims (Claims One, Three, and Four) without proving any facts about the manufacture of marijuana triggering the Marijuana Exclusion. Leach Mot. 13–15. Meanwhile, Ohio Security argues that every claim asserted against the Leaches

and CPM is necessarily rooted in the manufacture of marijuana, also emphasizing the breadth of the language of the Marijuana Exclusion. Pl.'s Resp 1–2. Ohio Security maintains that none of the Eldridge Complaint's claims arise independently from the fatal explosion that occurred on April 21, 2021, during the manufacturing process of cannabis extracts using a BHO process due to a failure of that system. *Id.* at 4. Ohio Security explains that, therefore, the claims not merely incidental to marijuana manufacturing, but rather fall within the Marijuana Exclusion for bodily injury "arising out of, caused by, or attributable to, whether in whole or in part" the manufacture of marijuana. *Id.* at 6; Policy p.43.

As Ohio Security's Complaint states, the Eldridge Complaint alleges that the explosion that caused Eldridge's injuries was a direct result of the construction, operation, and management of cannabinoid products manufacturing. Eldridge Compl. ¶¶ 58–61, 65 (Claim One); *id.* ¶¶ 88–91 (Claim Three); *id.* ¶¶ 93–100 (Claim Four); *see* Compl. ¶¶ 4.34–4.35, 3.38–4.40, 7.1–7.5. The manufacturing process involved a chemical process using butane gas and resulted in fatal injuries to Eldridge when the extraction system had a catastrophic failure and exploded. Eldridge Compl. ¶¶ 40–45. It alleges the Leaches and CPM had a role in facilitating, executing, or negligently permitting the ongoing manufacture of marijuana products with the butane gas system in a way, and under conditions, that ultimately caused Eldridge's death. *Id.* ¶¶ 65, 88–89, 99–102. Ohio Security argues the claims against the Leaches and CPM in the Eldridge Complaint are exclusively based on this incident. *See* Pl.'s Resp. 14.

Oregon Courts have held that the ordinary meaning of "arising out of" is "very broad." *Clinical Rsch. Inst. of S. Or., P.C. v. Kemper Ins. Cos.*, 191 Or. App. 595, 601 (2004). "'[A]rising out of' connotes a causal connection with its subject and a concomitant broadening in the scope of the subject." *Id.* (citing *Webster's Third New Int'l Dictionary* 117, 1603 (unabridged ed. 1993)).

For instance, when used in an automobile liability provision for coverage for damages "arising out of" the ownership, maintenance, or use of an automobile, the words "'arising out of' . . . are of broader significance than the words 'caused by', and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle." *Oakridge Cmty. Ambulance v. U. S. Fidelity*, 278 Or. 21, 25 (1977). The breadth of the phrase can vary with the context, but when interpreting an "arising out of" exclusion in a certain context, a court must not adopt an interpretation that would turn the exclusion into a "null set" in that context. *Final Table, LLC v. Acceptance Cas. Ins. Co.*, 328 Or. App. 620, 628–29 (2023), *rev. denied*, 372 Or. 63 (2024) (rejecting interpretation of exclusion for "[a]ny claims arising out of Assault and/or Battery" in liquor liability policy that would mean assault and battery that were a foreseeable consequence of negligently overserving alcohol would not be covered by exclusion); *see also Oakridge Cmty. Ambulance*, 278 Or. at 25 n.1 ("By 'causal connection' we do not mean 'proximate cause.'").

Here, the Marijuana Exclusion further broadens "arising out of" by including "whether in part or in whole." Policy p.43. If the language of the Marijuana Exclusion as to the "design" or "manufacture" of marijuana is to be given effect within the Policy, it must exclude the Eldridge Complaint's claims from coverage. *See Final Table*, 328 Or. App. at 628–29. To be sure, claims based on general property maintenance or workplace injury would not trigger the Marijuana Exclusion under similar circumstances—for instance, an ordinary gas leak on the Property. However, the Eldridge Complaint does not raise such claims. The relevant claims here, as Ohio Security identifies, are inseparable from the process of manufacturing marijuana extracts at the Property. *See* Compl. ¶¶ 4.34–4.35, 3.38–4.40. These claims, at least in part, "originat[e] from, [are] incident to, or hav[e] [a] connection with" the design or manufacture of marijuana and

therefore "aris[e] out of" the manufacture of marijuana.[1] *Oakridge Cmty. Ambulance*, 278 Or. at 25. Even if, as the Leaches point out, the Eldridge Complaint does not necessarily rely on direct reference to marijuana, Ohio Security has adequately pleaded that the Eldridge Estate's claims did not arise independently from marijuana manufacturing—the Eldridge Complaint does not allege an ordinary, independent gas leak. *See, e.g.*, Leach Mot. at 13. The wording of a complaint doesn't dictate duty to defend, its factual allegations do.[2] *See Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91 (2001). Because the Complaint connects the facts of the Eldridge Complaint to the language of the Policy, and because the Marijuana Exclusion applies to the facts as pleaded, the Complaint plausibly establishes the Policy does not cover any claims against the Leaches or CPM. Accordingly, having drawn all inferences in favor of Ohio Security as the non-moving party, Ohio Security has adequately stated a claim for relief.

## CONCLUSION

Mary Laurent Leach and Randall Leach's Motion to Dismiss for Failure to State a Claim (ECF No. 18) is DENIED. CPM Real Estate Services' Motion to Dismiss (ECF No. 20), joining the Leaches' Motion, is likewise DENIED.

IT IS SO ORDERED.

---

[1] *Cf. Oakridge Cmty. Ambulance*, 278 Or. at 27–28 (finding claim that incorporated possibility of negligence in maintaining or operating ambulance, potentially causing it "to break down or to be involved in an accident on the way to pick [patient] up to take him to the hospital," involved a sufficient causal connection between patient's eventual death in the absence of timely medical attention and insured ambulance service's "maintenance" or "use" of its ambulance, such that the former "arose out of" the latter, imposing duty to defend on insurer under insurance policy covering injury or death "arising out of the ownership, maintenance or use of the automobile" in insured's action to recover litigation costs from insurer following patient's lawsuit).

[2] The Leaches' argument regarding a "lesser included offense" fails. Leach Mot. at 10–11, 13. The Eldridge Complaint contains no factual predicate for a claim that is separate from the incident that, as discussed, falls within the Marijuana Exclusion. This case therefore diverges from the situation discussed in *Abrams*, where the underlying complaint's allegations of *intentional* conversion included allegations of *ordinary* conversion, supporting two separate claims, the latter of which was covered under the insurance policy at issue. 355 Or. at 400. Merely excising "superfluous allegations" in the Eldridge Complaint creates no such distinction here. Leach Mot. at 13.

DATED this 14th day of October, 2025.

                                                             s/Michael J. McShane
                                                              Michael J. McShane
                                                   United States District Judge