IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY, | Case No. 3:25-cv-00647-MC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JESSICA SMITH, individually and as Personal Representative of the Estate of Furious Talon Eldridge, deceased, KLOEY KELTON, as guardian ad litem for R. K.-E., a minor, CPM REAL ESTATE SERVICES, INC., an Oregon corporation, JOSEPH P. DONAHUE, III, an individual, MARY LAURENT LEACH, an individual, RANDALL LEACH, an individual, and PRIMORDIAL MOUNTAIN, LLC, d/b/a CBDAILY REMEDIES, an Oregon Limited Liability Company, | |
| Defendants. | |

MCSHANE, Judge:

Plaintiff Ohio Security Insurance Company ("Ohio Security") brings this action for declaratory relief pursuant to 28 U.S.C. § 2201 to determine its duties and obligations to defend Defendants Joseph P. Donahue, III, Primordial Mountain, LLC, CPM Real Estate Services, Inc., and Mary Laurent Leach and Randall Leach under a contract of insurance with respect to ongoing litigation in Oregon state court by Defendants Jessica Smith and Kloey Kelton. Compl., ECF No. 1. On January 5, 2026, Plaintiff Ohio Security filed a Partial Motion for Summary

1 – OPINION AND ORDER

Judgment (ECF No. 49) seeking a declaratory judgment on its duty to defend and to dismiss Defendants Smith and Kelton's counterclaim for a declaratory judgment.

Because the claims in the state court action against Defendants arise from bodily injury that is excluded from coverage under the terms of Ohio Security's insurance contract, Ohio Security's Motion for Partial Summary Judgment (ECF No. 49) is GRANTED.

## PROCEDURAL BACKGROUND

On July 28, 2025, Ohio Security moved for entry of default against Joseph P. Donahue, III ("Donahue") and Primordial Mountain, LLC ("Primordial"), Donahue's company. ECF No. 27. The Clerk entered default as to Donahue and Primordial on September 3, 2025. ECF No. 36. On September 5, 2025, the Court stayed Ohio Security's claims seeking a declaratory judgment that it has no obligation to indemnify the Leaches or CPM pending resolution of the underlying state court action. ECF No. 37. Lastly, on January 14, 2026, Ohio Security filed an Unopposed Motion to Dismiss Defendant Kloey Kelton without Prejudice, which the Court granted. ECF No. 50, 51.

The Leaches and CPM continue to litigate Ohio Security's duty to defend.

## LEGAL STANDARD

Upon a motion for summary judgment, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine" dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* To defeat summary judgment, a nonmoving party must do more

"than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

## SUMMARY OF UNDISPUTED FACTS

### I. The Underlying Action

#### A. The Incident

On April 18, 2024, the Estate of Furious Talon Eldridge ("Eldridge Estate") sued Donahue, Primordial, the Leaches, CPM, and other entities that sold components for a Butane Hash Oil ("BHO") extraction system in Multnomah County Circuit Court in the State of Oregon ("Underlying Action").[1] Guadagno Decl., Ex. A ("Eldridge Compl."), ECF No. 56-1; *Estate of Eldridge v. Donahue*, Case No. 24CV18892 (Or. Circ. Ct.). The Eldridge Estate's claims arise from a butane gas leak and explosion from which Mr. Eldridge suffered severe burns and later died. The Underlying Action is ongoing and set for a jury trial beginning on November 30, 2026.

The following is drawn from the allegations of the Eldridge Complaint. The Leaches owned an industrial warehouse at 1508 Antelope Road in White City, Oregon (the "Property") that was managed by CPM. Eldridge Compl. ¶¶ 24–26. On June 5, 2020, the Leaches leased the

---

[1] The Leaches note in their Response that the operative complaint was not before the Court. Leach Resp. 14, ECF No. 52. However, in Reply, Ohio Security provides the Amended Complaint in the Underlying Action filed December 16, 2025. Reply 6–8, ECF No. 55; Guadagno Decl. Ex. A; *see also* Row Decl., Ex. C at 17 (Underlying Action docket activity), ECF No. 53-3. The allegations in this document are identical to those in the document provided to the Court at the outset of this action (ECF No. 1-1, Ex. C at pp.71–104), with the sole exception of the removal of Kloey Kelton as a party. The Leaches also direct the Court to docket activity in the Underlying Action showing the state court granted leave to file an additional amended complaint. Row Decl., Ex. C at 17. The Leaches, who are defendants in the Underlying Action, do not suggest a new operative complaint has been filed since December 17, 2025. Leach Resp. 14. That an amended complaint may be filed at some point in the future, now at least nine months since the filing of this action, cannot indeterminately delay a declaration of an insurer's duty to defend, which depends on the operative complaint. *See Ohio Sec. Ins. Co. v. Secon Contractors, Inc.*, 2021 WL 1740247, at *2–3 (D. Or. May 3, 2021); *see also Ledford v. Gutoski*, 319 Or. 397, 400 (1994) ("An insurer should be able to determine from the face of the complaint whether to accept or reject the tender of the defense of the action."). The Court proceeds with the current operative complaint dated December 16, 2025. Guadagno Decl., Ex. A.

Property to Donahue's company, Primordial. *Id*. ¶ 24. Primordial and Donahue stated in the lease agreement that the purpose for occupying the Property was to make "CBD Products." *Id*. ¶¶ 23, 27. Donahue and Primordial used the property to operate a BHO extraction lab designed to extract cannabinoids, including tetrahydrocannabinol (THC) and cannabidiol (CBD), from raw cannabis using butane gas. *See id.* ¶¶ 29–32. Butane gas is hazardous, extremely flammable, odorless, highly volatile, and has a "wide explosive range." *Id*. ¶¶ 30, 47.

Donahue hired Mr. Eldridge to help design, construct, and operate the BHO extraction system. Eldridge Compl. ¶ 33. The Eldridge Estate alleges that although the BHO process is a common process to manufacture concentrated cannabis products, Primordial used components that did not meet applicable certification standards and would not have met minimum licensing requirements for such an operation. *Id.* ¶¶ 38–41. Donahue, Eldridge, and Primordial operated a BHO extraction system at the Property without ever obtaining the required license. *Id.* ¶¶ 40–41. Mr. Eldridge had no expertise in fire safety, industrial code compliance, or cannabinoid extraction safety protocols. *Id.* ¶ 34. The Property lacked safety features, including explosion venting, fire suppression systems, proper ventilation, and emergency lighting. *Id.* ¶ 43.

On April 21, 2021, Mr. Eldridge and others were operating the BHO extraction system at the Property when a component failed and leaked butane into the building. Eldridge Compl. ¶ 44. Everyone evacuated the Property. *Id*. Donahue then directed Mr. Eldridge to accompany him back into the Property to stop the leak. *Id*. Before Mr. Eldridge could stop the leak, the butane ignited, causing an explosion, destroying the Property and severely burning Mr. Eldridge. *Id.* Mr. Eldridge died the following day. *Id*. ¶ 45.

### B. The Eldridge Complaint Claims

The Eldridge Estate alleges that Donahue, Primordial, the Leaches, and CPM are

responsible for creating or permitting hazardous conditions during the manufacture of marijuana derivatives in violation of building codes, fire codes, and employment safety laws. The Eldridge Estate alleged seven claims: (1) Premises Liability; (2) Employer Liability; (3) Negligence *Per Se* according to the Oregon Safe Employment Act; (4) Negligence; (5) Strict Products Liability – Failure to Warn; (6) Strict Products Liability – Design Defect; and (7) Negligence (against product defendants). *See generally* Eldridge Compl. ¶¶ 52–127.

The Leaches and CPM are named in Claims One, Two, Three, and Four. In Claim One for Premises Liability, the Eldridge Estate alleges the Leaches knew or should have known of "deficiencies and code violations" that created an "unreasonably dangerous condition" at the Property, and that the Leaches breached their duty to Mr. Eldridge by failing to maintain the Property in a "reasonably safe condition." Eldridge Compl. ¶¶ 60, 64. The Eldridge Estate alleges Mr. Eldridge's injuries were the "proximate result of the negligence and breaches of duty" of the Leaches and CPM. *Id*. ¶ 65. In Claim Two for "Employer Liability" against Donahue and Primordial, the Eldridge Estate alleges "Donahue engaged in a commercial-scale cannabis extraction operation that involved a substantial risk of danger by exposing employees, including Mr. Eldridge, to [a] closed-system Butane Hash Oil extraction system," violated the Oregon Safe Employment Act, and "caused or substantially contributed to Mr. Eldridge's severe injuries and death." *Id.* ¶¶70–75. In Claim Three for Negligence *Per Se*, the Eldridge Estate alleges "breaches of the Oregon Safe Employment Act caused or were a substantial factor in causing" Mr. Eldridge's injuries. *Id*. ¶ 91. In Claim Four for Negligence, the Eldridge Estate alleges the Leaches and CPM knew or should have known that Donahue and Primordial were operating the BHO system and storing butane at the Property and were either negligent in initially leasing the Property to Donahue and Primordial or negligently permitted Donahue and Primordial to continue their operation by

failing to terminate the lease. *Id*. ¶¶ 98, 100–02.

## II.     <u>The Ohio Security Policy</u>

At the time of Mr. Eldridge's injury, Ohio Security insured Primordial pursuant to Commercial General Liability Policy No. BLS (22) 63 09 90 57 (the "Policy"). Policy, ECF No. 1-1 Ex. A, p.1–68. In addition to defending Primordial, Ohio Security is defending Donahue, CPM, and the Leaches in the Underlying Action, under a reservation of rights. Compl. ¶ 4.44; ECF No. 1-1 Ex. D–F, p.105–128. The lease agreement between the Leaches and Primordial required Primordial to provide additional insured coverage to the Leaches. ECF No. 1-1 Ex. E, p.113–20.

The Policy generally provides coverage for "bodily injury" or "property damage" caused by an "occurrence" (Policy p.25–26 ("CG 00 01 04 13" at 1–2)):

> SECTION I - COVERAGES
> COVERAGE A - BODILY INJURY AND PROPERTY
> DAMAGE LIABILITY
>   1. Insuring Agreement
>       a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>       b. This insurance applies to "bodily injury" and "property damage" only if:
>           (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>           (2) The "bodily injury" or "property damage" occurs during the policy period;
>       . . .
>       e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

The Policy defines "bodily injury," "occurrence," and "property damage" as follows

(Policy p.38, 40 ("CG 00 01 04 13" at 14, 16)):

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> 17. "Property damage" means:
>     a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

The Policy also contains a "Marijuana Exclusion." Policy p.43 ("CG 21 18 10 17"). In relevant part, it provides that "'bodily injury' . . . arising out of, caused by, or attributable to, whether in whole or in part, . . . the 'design [or] manufacture' of 'marijuana'" is excluded from coverage (*id.*):

> A. The following exclusion is added:
> This insurance does not apply to:
>   1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:
>      a. The design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana";
>      b. The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "marijuana"; or
>   2. "Property damage" to "marijuana". This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph A.1. or A.2. above.
> . . .
> B. The following definition is added to the Definitions section:
> "Marijuana":
>   1. Means: Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.
>   2. Paragraph B.1. above includes, but is not limited to, any of the following containing such THC or cannabinoid:
>      a. Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or
>      b. Any compound, byproduct, extract, derivative, mixture or

        combination, such as, but not limited to:
            1) Resin, oil or wax;
            2) Hash or hemp; or
            3) Infused liquid or edible marijuana;
        whether derived from any plant or part of any plant set forth in
        Paragraph B.2.a. above or not.

## **DISCUSSION**

The Court exercises its discretion to consider this action for declaratory judgment. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495–97 (1942).

**I.**     **Insurance Contracts and Insurers' Duty to Defend**

A federal court, sitting in diversity, applies state law when interpreting an insurance policy. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). Interpretation of an insurance policy is a question of law. *Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 224 Or. App. 235, 241 (2008). If a term or phrase is expressly defined, the court must apply the provided definition. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650 (2006). Because the insurer has the burden of drafting clear and unambiguous insurance policies, genuine ambiguity in contractual language is construed in favor of the insured. *See Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 470–71 (1992); *North Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 29 (2001). Accordingly, coverage exclusions are to be narrowly construed. *Am. Econ. Ins. Co. v. Hughes,* 121 Or. App. 183, 186 (1993). And whether an exclusion applies is a question of law that seeks to determine the parties' intent. *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or. App. 468, 478 (2010).

An insurer has a duty to defend the insured only "if the claim made against the insured is one covered by the insurer." *Casey v. Nw. Sec. Ins.,* 260 Or. 485, 489 (1971). Under Oregon law, a court resolves the issue of an insurer's duty to defend by analyzing only two documents: the insurance policy and the operative complaint in the underlying liability action. *Abrams v. Gen.*

*Star Indem. Co.*, 335 Or. 392, 396–97 (2003). An insurer has a duty to defend if the operative complaint in the underlying action contains allegations of covered conduct as to any claim, even if it also contains allegations of non-covered conduct as to the same or other claims. *See id.* at 399–400; *Ferguson v. Birmingham Fire Insurance Co.*, 254 Or. 496, 507 (1969). "[T]he insured has the burden to prove coverage while the insurer has the burden to prove an exclusion from coverage." *Fountaincourt Homeowners' Ass'n v. Fountaincourt Dev., LLC*, 360 Or. 341, 360 (2016) (cleaned up).

## II.    The Leaches' Request for Relief Under Rule 56(d)

The Leaches ask the Court to deny Ohio Security's Motion pursuant to Federal Rule of Civil Procedure 56(d) ("Rule 56(d)"). Leach Resp. 2, ECF No. 52.[2] Rule 56(d) provides that if a nonmovant shows by affidavit or declaration that, "for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. The nonmoving party seeking Rule 56(d) relief must specify the facts it hopes to obtain from discovery that are essential for opposing summary judgment. *See Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). A court considers whether the nonmoving party had sufficient opportunity to conduct discovery, the party's diligence in doing so, whether the information sought is based on mere speculation, and whether the requested discovery would preclude summary judgment. *Id.*; *Martinez v. Columbia Sportswear USA Corp.*, 553 Fed. App'x 760, 761 (9th Cir. 2014) (collecting cases).

The Leaches argue they should be permitted to obtain discovery of what Ohio Security

---

[2] CPM joins the Response filed by the Leaches. ECF No. 54.

knew at the time of issuing the Policy to inform their arguments for illusory coverage and contract reformation to omit the Marijuana Exclusion from the Policy. Leach Resp.10–13. The Oregon Supreme Court has established "the primary and governing rule of construction of insurance contracts is to ascertain the intention of the parties." *Colony Ins. Co. v. Victory Constr. LLC*, 239 F. Supp. 3d 1279, 1283 (D. Or. 2017) (*quoting Hoffman Constr. Co.*, 313 Or. at 469). The intention of the parties to an insurance contract is determined from the terms of the policy. *Hoffman Constr. Co.*, 313 Or. at 469 (citing Or. Rev. Stat. § 742.016). As such, extrinsic evidence is generally not considered, neither to introduce nor resolve ambiguity in terms. *Andres v. Am. Standard Ins. Co. of Wis.*, 205 Or. App. 419, 424 (2006) ([S]ince *Hoffman Construction Co.*[,] the interpretation of insurance policies is a question of law, not one that is resolved by reference to evidence extrinsic to the policy itself."); *Emps. Ins. of Wausau, A Mut. Co. v. Tektronix, Inc.*, 211 Or. App. 485, 505 (2007) ("[D]espite ordinary rules of contract interpretation, extrinsic evidence of the parties' intent is not part of the interpretation of an insurance policy under Oregon law."); *see also Travelers Prop. Cas. Co. of Am. v. ServerLogic Corp.*, 2015 WL 920419, at *4 (D. Or. Mar. 3, 2015).

Here, the Leaches' arguments that the Marijuana Exclusion does not apply based on the parties' knowledge at the time of formation explicitly rely on extrinsic evidence to inform the interpretation of the Policy, including evidence to be obtained by discovery. Leach Resp. 11–13. The Leaches at no point explain why extrinsic evidence in the sole possession of Ohio Security that could be obtained through discovery should be considered to interpret the Policy in this case, contrary to the general rule recognized by Oregon courts. *See Tektronix*, 211 Or. App. at 503 ("Issues of contractual intent are determined by the objective manifestations of the parties based on the terms that they use and not on what they subjectively believe that the terms mean."); *see also Forbidden Fruit Ciderhouse, LLC v. Ohio Ins. Co.*, 2020 WL 13015916, at *3 (D. Or. Dec.

15, 2020) (suggesting possibility, where "*ambiguous* language is a non-standard policy provision that was negotiated by the insurer and insured, logic dictates that a court should consider whatever evidence of the parties' intent is available." (internal quotation omitted) (emphasis added)). Further, the Leaches provide the Court with little more than "hope" discovery will support their arguments based on what they "suspect[]" to be the case. Leach Resp. 13; *see generally* Row Decl., Ex. A (requests for production). In fact, despite referring to specific potential facts, the Leaches appear to assert that regardless of what discovery reveals, the Marijuana Exclusion should be inapplicable.[3] In doing so, the Leaches severely undercut the necessity of the requested discovery to oppose summary judgment. Their requests also appear all the more speculative in light of this approach. *See Gault v. United States*, 2022 WL 14177074, at *10 (C.D. Cal. Sept. 26, 2022) ("Additional discovery that is nothing more than a fishing expedition is not a ground for relief under Rule 56(d)."), *report and recommendation adopted*, 2022 WL 14317642 (C.D. Cal. Oct. 22, 2022).

The Court denies the requested relief under Rule 56(d).

### III.    Duty to Defend Under the Policy

The Court grants summary judgment for Ohio Security on its claim for a declaration it has no duty to defend Defendants Donahue, Primordial, CPM, and the Leaches in the Underlying Action. Because Oregon law limits the Court's analysis to the Policy and the Eldridge Complaint, and additional discovery of extrinsic facts is unwarranted in this case, there is no dispute of material fact. *See Abrams*, 335 Or. at 396–97; *Drake v. Mut. of Enumclaw Ins. Co.*, 167 Or. App.

---

[3] *Compare* Leach Resp. 11 ("If OSIC was aware that Primordial was involved in manufacturing *anything* having to do with cannabis when it issued the Policy, then OSIC would be estopped from relying on the Marijuana Exclusion to avoid defending [the Leaches]."), *and id.* at 12 ("If OSIC had notice that the Policy (or a prior policy) was being sought in order to comply with the insurance requirements of the Lease . . . ."), *with id.* at 13 ("If the evidence shows that OSIC did not specifically discuss with Primordial the Marijuana Exclusion's limitation on the coverage sought. . . .").

11 – OPINION AND ORDER

475, 478 (2000). The Eldridge Complaint's claims fall within the Marijuana Exclusion for bodily injury "arising out of, caused by, or attributable to, whether in whole or in part" the manufacture of marijuana. Policy p.43. Furthermore, to the extent the Leaches challenge the inclusion of the Marijuana Exclusion in the Policy, these challenges are unsuccessful. Because the Policy does not cover the Eldridge Complaint's claims, Ohio Security is entitled to judgment as a matter of law.

### A. Applying the Marijuana Exclusion

Ohio Security argues every claim asserted in the Eldridge Complaint is necessarily rooted in the manufacture of marijuana and emphasizes the breadth of the Marijuana Exclusion's language.[4] Mot. 19–20. The Eldridge Complaint alleges the explosion that caused Mr. Eldridge's injuries was a direct result of the construction, operation, and management of cannabinoid products manufacturing. Eldridge Compl. ¶¶ 58–61, 65 (Claim One); *id.* ¶¶ 70–75 (Claim Two); *id.* ¶¶ 88–91 (Claim Three); *id.* ¶¶ 93–100 (Claim Four). The manufacturing operation involved a chemical process using butane gas and Mr. Eldridge sustained fatal injuries when the extraction system had a catastrophic failure and exploded during operation on April 21, 2021. *Id.* ¶¶ 40–45. The Eldridge Complaint alleges Primordial, Donahue, CPM, and the Leaches had a role in facilitating, executing, or negligently permitting the ongoing manufacture of marijuana products with the butane gas system in a way, and under conditions, that ultimately caused Mr. Eldridge's death. *Id.* ¶¶ 65, 88–89, 99–102. Ohio Security observes the claims against Donahue, Primordial, CPM, and the Leaches in the Eldridge Complaint are exclusively based on this incident and have no factual basis independent from the manufacture of marijuana. *See* Mot. 19–21.

---

[4] The Marijuana Exclusion contains a narrow carve-out for "any 'marijuana' that is not designed, manufactured, distributed, sold, served or furnished for bodily: Ingestion; Inhalation; Absorption; or Consumption." Policy p.43 (cleaned up). However, the Eldridge Complaint explicitly alleges the cannabis extracts being manufactured were intended for "[a]rtisanal body care and gourmet products" and this exception plainly does not apply here. Eldridge Compl. ¶ 23. The Leaches do not contest this conclusion.

12 – OPINION AND ORDER

The Marijuana Exclusion applies to these claims. Oregon courts have held the ordinary meaning of "arising out of" is "very broad." *Clinical Rsch. Inst. of S. Or., P.C. v. Kemper Ins. Cos.*, 191 Or. App. 595, 601 (2004). "'[A]rising out of' connotes a causal connection with its subject and a concomitant broadening in the scope of the subject." *Id.* (citing *Webster's Third New Int'l Dictionary* 117, 1603 (unabridged ed. 1993)). For instance, when used in an automobile liability provision for coverage for damages "arising out of" the ownership, maintenance, or use of an automobile, the words "'arising out of' . . . are of broader significance than the words 'caused by', and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle." *Oakridge Cmty. Ambulance Serv. Inc. v. U.S. Fid. & Gaur. Co.*, 278 Or. 21, 25 (1977). The breadth of the phrase can vary across contexts, but when interpreting an "arising out of" exclusion in a certain context, a court must not adopt an interpretation that would turn the exclusion into a "null set" in that context. *Final Table, LLC v. Acceptance Cas. Ins. Co.*, 328 Or. App. 620, 628–29 (2023), *rev. denied*, 372 Or. 63 (2024) (rejecting interpretation of exclusion for "[a]ny claims arising out of Assault and/or Battery" in liquor liability policy that would mean assault and battery that were foreseeable consequences of negligently overserving alcohol would not be covered by exclusion); *see also Oakridge Cmty. Ambulance*, 278 Or. at 25 n.1 ("By 'causal connection' we do not mean 'proximate cause.'"). Here, the Marijuana Exclusion further broadens "arising out of" by including "whether in part or in whole." Policy p.43.

If the language of the Marijuana Exclusion as to the "design" or "manufacture" of marijuana is to be given effect within the Policy, it must exclude the Eldridge Complaint's claims from coverage. *See Final Table*, 328 Or. App. at 628–29. To be sure, claims arising from general property maintenance and generic injury, especially to a member of the public, would not trigger the Marijuana Exclusion. However, the Eldridge Complaint does not raise such claims; its claims

are inseparable from the process of manufacturing marijuana extracts at the Property. These claims, at least in part, "originat[e] from, [are] incident to, or hav[e] [a] connection with" the design or manufacture of marijuana and therefore "aris[e] out of" the manufacture of marijuana.[5] *Oakridge Cmty. Ambulance*, 278 Or. at 25. Even if the Eldridge Complaint can be parsed without direct reference to marijuana, the wording of a complaint doesn't dictate duty to defend, its factual allegations do. *See Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91 (2001). The statutory or common law source of a claim also does not alter the Court's inquiry. *See L & D of Or., Inc. v. Am. States Ins. Co.*, 171 Or. App. 17, 20 (2000) ("[R]eliance on the labels placed on counts in a complaint alone is not sufficient to determine the duty to defend . . . it is the 'conduct' alleged that is critical to the determination."). Here, the Eldridge Estate's claims did not arise independently from marijuana manufacturing—the Eldridge Complaint does not allege an ordinary, independent gas leak or failure of property maintenance.

Because the Marijuana Exclusion applies to the facts of the Eldridge Complaint, the Policy does not cover its claims. Ohio Security is entitled to a declaration it has no duty to defend Defendants Donahue, Primordial, CPM, and the Leaches in the Underlying Action. *United States v. Transp. Indem. Co.*, 544 F.2d 393, 395 & n.1 (9th Cir. 1976).

### B. Challenges to the Marijuana Exclusion

By way of seeking additional discovery under Rule 56(d), the Leaches argue the Marijuana Exclusion cannot be enforced because its inclusion in the Policy renders the Policy's coverage illusory, and because the Policy should be reformed to exclude it. Leach Resp. 10–13. Independent

---

[5] *Cf. Oakridge Cmty. Ambulance*, 278 Or. at 27–28 (finding claim that incorporated possibility of negligence in maintaining or operating ambulance, potentially causing it "to break down or to be involved in an accident on the way to pick [patient] up to take him to the hospital," involved a sufficient causal connection between patient's eventual death in the absence of timely medical attention and insured ambulance service's "maintenance" or "use" of its ambulance, such that the former "arose out of" the latter, thus imposing duty to defend on insurer under insurance policy covering injury or death "arising out of the ownership, maintenance or use of the automobile" in insured's action to recover litigation costs from insurer following patient's lawsuit).

of the requested discovery, discussed above, neither challenge persuades the Court the Marijuana Exclusion must be omitted.

The Marijuana Exclusion does not create illusory coverage. The illusory coverage doctrine invalidates exclusions so broad they effectively eliminate a policy's coverage, rendering it illusory. *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*, 2007 WL 464715, at *10 (D. Or. Feb. 7, 2007). The issue before the Court here was whether the Policy provides coverage for the claims in the Eldridge Complaint and the Court determined it does not; however, the Court's finding that the Marijuana Exclusion applies to the facts alleged in the Eldridge Complaint concerning bodily injuring arising from the manufacture of marijuana by no means implies the Marijuana Exclusion eliminates all coverage. *See id.* As discussed, if the Marijuana Exclusion does not apply to these events, it is difficult to conceive of any event to which it would apply—whereas the Leaches raise illusory coverage, courts must also interpret contracts to give effect to all provisions. *Hoffman Constr. Co.*, 313 Or. at 472. If there is a spectrum of claims subject to the Marijuana Exclusion, the Eldridge Complaint's claims must fall near the extreme placing them firmly within the exclusion. Accordingly, without making any additional findings as to the breadth of the Marijuana Exclusion, the Court nevertheless concludes there exist other potential claims, though none in the Underlying Action, to which the Marijuana Exclusion would not apply. *See Scottsdale Ins. Co. v. Nat'l Wings & Armor Found.*, 2019 WL 281284, at *3 (D. Or. Jan. 22, 2019).

Contract reformation to remove the Marijuana Exclusion is not appropriate here. Reformation of a contract "is available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing." *A & T Siding, Inc. v. Capitol Specialty Ins. Corp.*, 358 Or. 32, 42 (2015) (en banc) (internal quotations omitted) (quoting *Restatement (Second) of Contracts* § 155 cmt. a (1981)). The remedy of contract

reformation requires, at least, a showing of a mutual mistake, or a unilateral mistake by one party along with inequitable conduct by the other party, and that the party seeking reformation was not grossly negligent. *Emrys v. Farmers Ins. Co. of Or.*, 294 Or. App. 107, 112 (2018) (quoting *A & T Siding*, 358 Or. at 42–43). Here, the Leaches assert if Ohio Security knew the "insured's business involved . . . a marijuana byproduct," that knowledge would suggest "the actual intended terms of the insurance contract between Primordial and [Ohio Security] were the entirety of the Policy *minus* the Marijuana Exclusion." Leach Resp. 12 (emphasis in original). This version of the Leaches' argument is unavailing because this awareness more readily implies the opposite conclusion—a provision regarding injury arising out of marijuana manufacturing in an insurance contract certainly makes sense if the insured property is used, or could be used, for marijuana manufacturing. *See Hoffman Constr. Co.*, 313 Or. at 472. The Leaches appear to recognize this logic, as they simultaneously argue, "[i]f the evidence shows that [Ohio Security] did not specifically discuss with Primordial the Marijuana Exclusion, . . . [it] will be evident . . . [Ohio Security] obviously did not intend to insure a marijuana-manufacture business." Leach Resp. 13. The Leaches' attempt to argue both sides is revealing, as it demonstrates there is good reason to include the Marijuana Exclusion in either case, eliminating the possibility of a mistake that could justify contract reformation. *See id.* at 12–13; *A & T Siding*, 358 Or. at 42 ("[The] mistake is one as to expression—one that relates to the content or effect of the writing that is intended to express [the] agreement[.]")

IV.    **<u>Counterclaim for Declaratory Judgment</u>**

The Marijuana Exclusion also dictates Plaintiff Ohio Securities' obligations to Defendants Smith and Kelton. Mot. 22–23. On July 2, 2025, Jessica Smith and Kloey Kelton filed an Answer to the Complaint and asserted a counterclaim against Ohio Security seeking a "declaration that the

Policy covers one or more of the other defendants' liability to [Smith] and [Kelton] arising out of the [Underlying Action]." Smith Ans. ¶43, ECF No. 17. As discussed, the relevant claims in the Underlying Action fall within the Marijuana Exclusion. Because the Policy does not cover the claims against Defendants Donahue, Primordial, CPM, and the Leaches in the Underlying Action, Defendants Smith and Kelton's counterclaim for declaratory relief must be dismissed.

## CONCLUSION

For the reasons stated above, Ohio Security's Partial Motion for Summary Judgment (ECF No. 49) is GRANTED. Ohio Security is entitled to a declaratory judgment that it has no duty to defend Defendants Joseph P. Donahue, III, Primordial Mountain, LLC, CPM Real Estate Services, Inc., and Mary Laurent Leach and Randall Leach in the Underlying Action. Further, Defendants Jessica Smith's and Kloey Kelton's counterclaim for declaratory judgment is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 6th day of March 2026.

                                                                      s/Michael J. McShane
                                                                      Michael J. McShane
                                                            United States District Judge